UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORCHID ISLAND TRS, LLC (formerly known as Opteum Financial Services, LLC) and BIMINI CAPITAL MANAGEMENT, INC. (formerly known as Opteum Inc.)<br><br>        Plaintiffs,<br>v.<br><br>INDYMAC BANCORP, INC. and INDYMAC BANK, F.S.B.<br><br>        Defendants. | Civil Action No. 07-CIV-9550 (LLS) |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO AMEND
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a)

EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

      A.      The Nature of this Dispute and its Factual Background

      B.      The Parties Agree to a Standstill on Discovery Pending the Outcome of a Mediation on March 25, 2008

      C.      Plaintiffs' Efforts to Ascertain the Scope and Impact of Defendants' Unauthorized Access to and Destruction of Plaintiffs' Computer Data

LEGAL ARGUMENT ............................................................................................................. 11

      PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT BASED ON NEWLY-DISCOVERED EVIDENCE SHOULD BE GRANTED IN THE INTERESTS OF JUSTICE

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

Federal Cases

Bridgeport Music Inc. v. Universal Music Group, Inc., -- F.R.D. --, 2008 WL 465072, at *7 (S.D.N.Y. 2008) ..... 12, 13

Colorado Capital v. Owens, 227 F.R.D. 181, 193 (E.D.N.Y. 2005) ..... 11

Dockery v. Tucker, 73 F.Supp.2d 224, 241 (E.D.N.Y. 1998) ..... 12

Forman v. Davis, 371 U.S. 178, 182 (1962) ..... 12

Friedl v. City of New York, 210 F. 3d 79, 88 (2d Cir. 2000) ..... 11

Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) ..... 12

Morrone v. CSC Holdings Corp., 404 F.Supp.2d 450, 456 (E.D.N.Y. 2005) ..... 11, 12

Richardson Greenshields Security v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) ..... 12

Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) ..... 11

Scott v. Merrill Lynch Pierce, Fenner & Smith, 1990 WL 209436, at *2-3 (S.D.N.Y. 1990) ..... 11

SEC v. DCI Telecommunications, Inc. 207 F.R.D. 32, 34 (S.D.N.Y. 2002) ..... 13

State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) ..... 12

Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ..... 12

State Cases

Fairway Dodge, LLC v. Decker Dodge, Inc., 191 N.J. 460, 468 (2007) ..... 1, 7, 8

State Statutes
N.J.S.A. 2A:38A-3 ..... 1, 6, 7, 15

Federal Rules
Fed. R. Civ. P. 15(a)(2) ..... 11

## PRELIMINARY STATEMENT

This motion to amend plaintiffs' Complaint arises from newly-discovered evidence that defendants wrongfully accessed computers and computerized data located in plaintiffs' offices throughout New Jersey. Further, defendants wrongfully negotiated the terms of future business relationships with plaintiffs' employees through unauthorized access of plaintiffs' computers, and destroyed and diverted computerized records belonging to plaintiffs. Accordingly, plaintiffs seek leave to amend their Complaint to add a cause of action pursuant to New Jersey's Computer-Related Offenses Act, N.J.S.A. 2A:38A-3 ("Computer Act"), which provides a remedy against those who engage in "unauthorized accessing or attempt to access any computer, computer system or computer network" in New Jersey.

Indeed, this case is very much like Fairway Dodge, LLC v. Decker Dodge, Inc., 191 N.J. 460, 468 (2007), where the Court affirmed Computer Act liability against ex-employees who accessed and copied computer records without authorization for the benefit of a subsequent employer. But unlike the subsequent employer in Fairway Dodge, which did not itself participate in Computer Act violations committed by plaintiff's ex-employees, in this case IndyMac and its employees deliberately and wrongfully accessed plaintiffs' computers to negotiate employment relationships with plaintiffs' employees, to train plaintiffs' employees in defendants' policies and procedures, and to establish offices throughout New Jersey with the wrongful benefit of assets and confidential information misappropriated from plaintiffs.

Plaintiffs recently uncovered facts to support Computer Act claims pursuant to the efforts of a forensic computer consultant retained to assist in electronic discovery and to uncover the scope of defendants' misconduct. Prior thereto, discovery had been on hold pursuant to a January 2008 agreement of the parties to engage in a mediation conducted by JAMS End Dispute

on March 25, 2008. Discovery ensued once efforts to mediate proved unsuccessful, leading to plaintiffs' discovery of factual predicates upon which this motion to amend is based. Defendants are not prejudiced, because discovery is at its inception and no depositions have been conducted to date. Accordingly, plaintiffs' motion to amend should be granted, and discovery should be extended for a reasonable period of time for the parties to explore the nature and scope of defendants' newly-discovered wrongdoing.

## STATEMENT OF FACTS[1]

### A.   The Nature of this Dispute and its Factual Background

Defendants' newly-discovered misconduct is further evidence of wrongdoing arising from a shameless raiding committed by defendants IndyMac Bancorp, Inc. and IndyMac Bank, F.S.B. (hereafter collectively "IndyMac") of plaintiffs' northeastern branch offices previously engaged in the mortgage origination business. IndyMac's misconduct was in flagrant breach of a Confidentiality Agreement, which afforded IndyMac unfettered access to confidential and proprietary information in connection with its due diligence in advance of an Asset Purchase Agreement that was to be executed by April 30, 2007. The immediate consequence was a stunning $3.5 million diminution in the value of plaintiffs' business directly attributable to defendants' misappropriation of the business it had previously expressed an intent to purchase, together with an additional $3.88 million in consequential damages flowing from defendants' breach of contract and tortious misconduct.

On March 28, 2007, IndyMac executed a Letter of Intent with Opteum Inc. (now known as Bimini Capital Management, Inc.) pursuant to which it was to complete its due diligence on the acquisition of plaintiffs' business within "5-10 business days," and to negotiate a final Asset Purchase Agreement by April 30, 2007. During this time, plaintiffs provided IndyMac with access to confidential and proprietary information that included:

- Loan Officer lists and compensation plan templates, which set forth commission and overage structures, minimum production standards, and compensation details;

- Critical Diligence Items, as set forth in a comprehensive list of documents that included physical copies of loans for on-site compliance review; financial statements, including audited financials, P&Ls, and reconciliation schedules; schedules of leases and contracts;

---

[1] This Statement of Facts is based on the allegations in the Complaint filed in this case, unless otherwise noted.

employment agreements, compensation schedules, and benefits manuals; and loan pricing structures;

- A Retail Channel Gross Payroll Report listing confidential information on each employee ranging from title to salary and additional compensation terms;

- A Lease List identifying the addresses of leased premises, landlords, lease commencement and renewal terms, and financial information including rents and security deposits; and

- An "updated list of employees needed for the Indy deal," which identified particular staffing needs and listed employee functions and salaries.

Unfortunately, IndyMac dragged its heels and was unresponsive to the efforts of plaintiffs' predecessor, Opteum, to negotiate the Asset Purchase Agreement by April 30, 2007. Accordingly, on May 7, 2007, Opteum announced that it was entering into an Asset Purchase Agreement with Prospect Mortgage.

Thereafter, IndyMac maliciously and tortiously raided Opteum's offices in Eatontown, Linden, Paramus, Mt. Arlington and Mt. Laurel/Woodbridge, New Jersey and Albany, New York. Further, IndyMac tortiously solicited Opteum's employees to engage in direct, unfair competition with Opteum, converted Opteum's confidential and proprietary information, tortiously interfered with Opteum's business, and aided and abetted breaches of fiduciary duty and loyalty by Opteum's former branch managers.

On June 30, 2007, Opteum entered into a First Amendment to Purchase Agreement with Prospect Mortgage, reducing the purchase price from $5 million to $1.5 million. This plummeting reduction in the value of assets sold was because "a material portion of Seller's loan origination personnel have been hired by a competitor of Seller that had access to confidential information of Seller."

**B.     Procedural History**

On June 8, 2007, plaintiffs Opteum Inc. and Opteum Financial Services LLC filed a complaint in New Jersey Superior Court asserting claims that included breach of contract and breach of implied covenants of good faith and fair dealing against IndyMac Bancorp Inc., claims of breach of fiduciary duty against seven individually-named ex-employee defendants, and tortious interference claims against all defendants. Although all causes of action arose out of and were related to the same core of operative facts, the Court (a) dismissed claims against IndyMac based on a New York forum selection clause in the Confidentiality Agreement, and (b) dismissed claims against two individually named defendants based on arbitration clauses in their employment agreements.

Accordingly, on October 25, 2007, plaintiffs filed an action in the United States District Court for the Southern District of New York, captioned <u>Orchid Island TRS, LLC v. IndyMac Bancorp, Inc. and IndyMac Bank, FSB</u>. The Complaint alleges both contract and tort causes of action arising from the IndyMac defendants' breach of the Confidentiality Agreement and misuse of confidential information concerning plaintiffs' business converted to defendants' wrongful use, including information concerning employee compensation, benefits, and sales production of key employees, in order to solicit and induce such employees to terminate employment with Opteum and to join IndyMac. <u>Id.</u>

In addition, the Complaint alleges tortious interference causes of action arising from IndyMac's wrongful derailing of the sale of Opteum's New Jersey vicinity mortgage origination business to Prospect Mortgage, resulting in a diminution in price from $5 million to $1.5 million – a sharp $3.5 million decline in the value of plaintiffs' business caused solely by defendants' tortious interference and misappropriation of confidential information.

On November 27, 2007, plaintiffs filed an Amended Complaint in New Jersey Superior Court against defendants Sharon Dellay, Craig Kowalski, John Palmiotto, Gerald Green, and Chris Stanton (hereafter the "Individually-Named Defendants"). The Amended Complaint alleges that the Individually-Named Defendants breached their fiduciary duties and the implied covenant of good faith and fair dealing in misuse of confidential and proprietary information for the benefit of IndyMac, plaintiffs' competitor. In addition, the Amended Complaint alleges tortious interference claims based on defendants' derailing the sale of plaintiffs' retail mortgage loan origination business to Prospect Mortgage.

### B. The Parties Agree to a Standstill on Discovery Pending the Outcome of a Mediation on March 25, 2008

On May 9, 2008, the parties exchanged answers and responses to initial interrogatories and document demands served in the New York federal action and in the New Jersey state action. No depositions have been conducted to date in either case. Defendants have produced a small number of documents responsive to plaintiffs' demands. The limited scope of discovery conducted to date is in part because the parties agreed in January 2008 to hold off in responding to these discovery demands pending efforts to mediate through JAMS End Dispute a resolution of both civil actions. The mediation was held at JAMS End Dispute's office in New York on March 25, 2008. Settlement discussions continued for approximately two weeks thereafter. Unfortunately, the parties' efforts to settle were unsuccessful, and discovery must now proceed.

### C. Plaintiffs' Efforts to Ascertain the Scope and Impact of Defendants' Unauthorized Access to and Destruction of Plaintiffs' Computer Data

Following the parties' unsuccessful efforts to mediate a resolution of this dispute, plaintiffs launched an investigation of defendants' wrongdoing in part through the efforts of plaintiffs' computer forensics consultant, DOAR Litigation Consulting ("DOAR"). This

investigation has substantiated plaintiffs' suspicion that defendants violated New Jersey's Computer-Related Offenses Act, N.J.S.A. 2A:38A-3 ("Computer Act"), through unauthorized access, conversion and destruction of computerized files stored on plaintiffs' computers located at plaintiffs' corporate offices in Paramus, New Jersey and branch offices throughout New Jersey.

New Jersey's Computer Act provides for compensatory damages, punitive damages, forensic investigatory costs, and attorney fees incurred in connection with litigation brought to vindicate the rights of any "person or enterprise damaged in business" as a result of the "unauthorized altering, damaging, taking or destruction of any data, data base, computer program, … computer system or computer network," or as a result of "purposeful or knowing, and unauthorized, accessing or attempt to access any computer…" N.J.S.A. 2A:38A-3a-e. *See* Fairway Dodge, LLC v. Decker Dodge, Inc., 191 N.J. 460, 468 (2007) (affirming Computer Act liability against ex-employees who accessed and copied computer records without authorization for benefit of subsequent employer).

In this case, both the IndyMac defendants and the Individually-Named Defendants knew on May 7, 2007 that Opteum planned to sell its loan origination business to Prospect Mortgage and not to IndyMac. All Individually-Named Defendants resigned or otherwise terminated employment with Opteum by May 31, 2007, and all Individually-Named Defendants immediately thereafter joined IndyMac.

DOAR's forensic analysis of Opteum's computerized records reflects that defendants engaged in business on IndyMac's behalf without authorization *from Opteum's New Jersey offices and by means of unauthorized access and use of Opteum's New Jersey computers for the benefit of IndyMac, Opteum's competitor.* Simply put, defendants were not authorized to access

or use Opteum computers in New Jersey for the purpose of setting up and training for their future business endeavors. Nor were defendants authorized to access and use Opteum's computers in New Jersey to divert corporate opportunities to IndyMac or to convert corporate assets of Opteum. A few examples of defendants' wrongdoing uncovered to date include:

- "Assumed lease site financials" email dated May 4, 2007 from Palmiotto (Opteum's Northeast Regional Manager) to Jason Kenoyer of IndyMac regarding a lease "to let go" because its staff is "truthfully not a high potential group. I do believe though that they can improve under Indy and if their overhead expense is contained they may be able to contribute." Klimov Dec. ¶ 8, Exh. A.

- "Emits Traning [sic] Tues May 8th" email dated May 5, 2007 from Palmiotto in response to inquiry regarding "Indy wants to train us in person on May 8th" and whether sales staff, processors, and underwriters should all attend. Id.

- "Thursday" email dated May 8, 2007 from Palmiotto to Scott Johnson of IndyMac in response to Johnson's invitation "to spend some time on the phone with you discussing your group – your needs and your expectations." Id.

- "did Julie send out Indy offer letters?" email dated May 17, 2007 from Palmiotto to Floyd. Id.

Indeed, IndyMac personnel accessed without authority the Individually-Named Defendants' computers through their Opteum email accounts to discuss their future careers at IndyMac, including:

- "i [sic] heard rumors that you will be running NY and NJ, give me a call i [sic] would really like to talk to you about things" email dated May 29, 2007 from David Bolton of IndyMac to Palmiotto. Id.

- "Thursday" email dated May 8, 2007 from Scott Johnson of IndyMac to Palmiotto regarding Johnson having "heard great things about you and your team!" Palmiotto stated that he will call in response to Johnson's invitation "to spend some time on the phone with you discussing your group – your needs and your expectations." Id.

- "Assumed lease site financials" email dated May 4, 2007 from Jason Kenoyer of IndyMac to Palmiotto summarizing "leases we are likely to assume under our transaction" and inquiring about one particular office with a "P&L [that] doesn't reflect any economics." Id.

- "Paramus office space – temporary" email dated May 21, 2007 from Dale Lazerson of IndyMac to Palmiotto regarding "could an exec suite work for your Paramus-based team? ... I will discuss further during the 1 p.m. call, but as an alternative, could exec suites work?" Id.

Virtually on the eve of their departures from Opteum, Individually-Named Defendants accessed their Opteum computers without authority to store IndyMac related documents, to send sensitive Opteum business records to other addresses for future use, and to destroy Opteum business records stored on Opteum's computer system. For instance:

- Kowalski (an Opteum branch office manager) maintained an "IndyMac" folder on his Opteum computer, where he stored documents that included a May 15, 2007 email from Scott Johnson of IndyMac attaching employment contracts, including a Lender Services Program Agreement and a Marketing Services Agreement. Klimov Dec. ¶ 8 Exh. B.

- Kowalski stored on his Opteum computer a May 15, 2007 email from Johnson attaching an "Indymac and NYMC rate sheets for today" and "a P&L from our Astoria Branch." Id.

- On May 29, 2007, between 7:02 p.m. and 7:35 p.m., Kowalski sent from his Opteum computer to his personal email address a total of 54 emails with 66 attachments, which included Opteum documents and business records. Id.

- Between May 1, 2007 and June 1, 2007, Dellay (an Opteum branch office manager) accessed 304 files and folders from her computer, 281 of which were in the Recycler portion of the drive indicating that they were deleted. Klimov Dec. ¶ 8 Exh. C.

Finally, Palmiotto's Opteum computer reflects communications that occurred through his Opteum computer even after termination of employment in or about mid-May 2007, including:

- "Opteum Albany Regional Office" email dated June 4, 2007 from Pompilio to Palmiotto regarding IndyMac's unauthorized presence in Opteum's office space, IndyMac's need "to immediately vacate the premises," and Opteum's plan "to change the locks." Id. Exh. A.

In short, Opteum's preliminary forensic analysis of the Individually-Named Defendants' computer records reflect that both IndyMac personnel and the Individually-Named Defendants themselves engaged in unauthorized access of Opteum's computers in New Jersey for purposes of negotiating and establishing defendants' future business relationships. Files and documents

belonging to Opteum were diverted elsewhere, and other files were destroyed. These activities each give rise to causes of action under New Jersey's Computer-Related Offenses Act. Accordingly, plaintiffs seek leave to amend their Complaint to add this cause of action based on defendants' unauthorized access to Opteum's computers and databases, and unauthorized destruction of computerized data and files.

## LEGAL ARGUMENT

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT BASED ON NEWLY-DISCOVERED EVIDENCE SHOULD BE GRANTED IN THE INTERESTS OF JUSTICE**

Where as here plaintiffs have filed a motion for leave to amend their Complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) (district court abused its discretion in denying leave to amend complaint, which "shall be freely given"). Liberal leave to add newly-discovered claims furthers the interests of justice because the amendment (a) protects against "harsh application of technical rules" that might otherwise bar such claims based on newly-discovered evidence, and (b) "encourages claims to be decided on their merits." Colorado Capital v. Owens, 227 F.R.D. 181, 193 (E.D.N.Y. 2005) (permitting amendment of complaint because "the interests of justice would be frustrated if it impaired Owens' claim by the harsh application of technical rules.") (citations omitted); Scott v. Merrill Lynch Pierce, Fenner & Smith, 1990 WL 209436, at *2-3 (S.D.N.Y. 1990) ("In the interests of justice, leave to amend a complaint is freely given if the plaintiff has at least colorable grounds for relief" and "[a]ccordingly, plaintiff is granted leave to amend his complaint").

Leave to amend is particularly appropriate where as here "there have been numerous factual developments since the complaint" was originally filed. Morrone v. CSC Holdings Corp., 404 F.Supp.2d 450, 456 (E.D.N.Y. 2005) (granting plaintiff's motion to amend and observing that "the inclusion of factual assertions and legally cognizable claims in an amended complaint may assist in a resolution of this case."); Friedl v. City of New York, 210 F. 3d 79, 88 (2d Cir. 2000) (amendment permitted after discovery reveals additional facts to support claim under 42 U.S.C.§ 1983); Bridgeport Music Inc. v. Universal Music Group, Inc., -- F.R.D. --,

2008 WL 465072, at *7 (S.D.N.Y. 2008) (federal courts consistently grant motions to amend where new facts and allegations are developed during discovery).

Moreover, so long as new causes of action based on new facts "do not appear to be frivolous on their face," leave to amend should be granted because "it would not serve the interests of justice to force the plaintiff to bring these allegations in a separate law suit." Dockery v. Tucker, 73 F.Supp.2d 224, 241 (E.D.N.Y. 1998) (granting leave to amend to add "completely new" claims based on a "different set" of alleged violations).

Indeed, leave to amend "should only be denied because of undue delay, bad faith, futility, or prejudice to the nonmoving party." Morrone, 404 F.Supp.2d at 456, citing Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Forman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend freely granted unless there was "bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment"). Mere delay, however, will not provide a basis to deny a motion to amend absent a showing of bad faith or undue prejudice. State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (district court abused discretion in denying leave to amend where no trial date on motion for summary judgment had been filed and where subject of amendment was one of objects of related discovery and related clearly to the original claims.).

In fact, parties have been permitted to amend their pleadings long after they acquired the facts necessary to support their claims. See, e.g., Richardson Greenshields Security v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (allowing amendment on second day of trial after 5-year interval between time supporting facts discovered and amendment); Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (amendment permitted four years after plaintiff discovered

facts asserted in amended complaint). Undue delay, standing alone, does not constitute the requisite bad faith to bar a motion to amend. SEC v. DCI Telecommunications, Inc. 207 F.R.D. 32, 34 (S.D.N.Y. 2002). Similarly, that a party may be required to expend additional time, money and effort to defend against an amended pleading does not constitute sufficient prejudice to bar a motion to amend. Id. at 34-35; Bridgeport Music, supra, 2008 WL 465072 at *7 ("the burden of undertaking discovery, which [the defendant] would have shouldered had the proposed amendment been included in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits.") (internal citations omitted).

Here, the interests of justice weigh strongly in favor of granting leave to amend the Complaint. Discovery is at its inception, and the parties are just beginning to respond to interrogatories and document demands. No depositions have yet been taken, so there is no risk of duplicative inconvenience or burden to any witness or party. Plaintiffs have just recently confirmed through the forensic computer analysis of DOAR the existence of a factual basis to assert Computer Act claims based on defendants' unauthorized access and use of computers in New Jersey, giving rise to Computer Act claims.

Further, there is no prejudice to defendants in permitting the amendment. The parties' delay in engaging in discovery was by consent pending the outcome of efforts to mediate a resolution of this dispute. Indeed, any delay in asserting computer-related causes of action is exacerbated by defendants' obfuscation of their own wrongdoing by deleting and diverting to their own use the evidence upon which plaintiffs' claims necessarily rely, and by the burden of locating and hiring forensic computer consultants with the necessary expertise to reconstruct evidence of what defendants have wrongfully accessed, diverted and destroyed.

Finally, a single adjudication of all claims in this proceeding conserves the resources of the Court and the parties like, compared with the alternative of duplicative and piecemeal adjudications if plaintiffs were required to file yet another complaint to assert state computer-related claims. Accordingly, plaintiffs' motion for leave to amend should be granted. Discovery should be extended for a reasonable amount of time commensurate with the difficulties of uncovering and exploring defendants' wrongful access and conversion of plaintiffs' computers and databases.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to amend the Complaint should be granted in the interests of justice to add a cause of action under the New Jersey Computer-Related Offenses Act, N.J.S.A. 2A:38A-3.

Respectfully submitted,

s\Robert Novack
ROBERT NOVACK
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

DATED: May 27, 2008
211288