EDWARDS ANGELL PALMER & DODGE LLP
Robert Novack, Esq.
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
*rnovack@eapdlaw.com*
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ORCHID ISLAND TRS, LLC (formerly known as Opteum Financial Services, LLC) and BIMINI CAPITAL MANAGEMENT, INC. (formerly known as Opteum Inc.) | Civil Action No. 07-CIV-9550 (LLS) |
| Plaintiffs, | |
| v. | NOTICE OF MOTION |
| INDYMAC BANCORP, INC. and INDYMAC BANK, F.S.B., | ORAL ARGUMENT REQUESTED |
| Defendants. | |

---

TO:   Michael E. Johnson, Esq.
      **ALSTON & BIRD LLP**
      90 Park Avenue
      New York, New York 10016
      *Attorneys for Defendants*

COUNSEL:

PLEASE TAKE NOTICE that as soon as counsel may be heard, the undersigned will apply to the United States District Court, Southern District of New York, 500 Pearl Street, New York, New York, 10007, before the Hon. Louis L. Stanton, J.S.C., for an Order pursuant to Fed.

NWK 212403.1

R. Civ. P. 15(a), granting Plaintiffs Orchid Island TRS, LLC and Bimini Capital Management, Inc. leave to file an Amended Complaint in the form annexed hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE that Plaintiffs will rely upon the accompanying Declaration of Gene Klimov dated May 13, 2008, with exhibits annexed, and the accompanying Memorandum of Law and Proposed Amended Complaint dated May 27, 2008.

PLEASE TAKE FURTHER NOTICE that Plaintiffs request oral argument of this Motion.

PLEASE TAKE FURTHER NOTICE that the originals of this Motion have been filed with the Clerk of the Court, and that copies have been sent to counsel of record.

No trial date has been set.

> EDWARDS ANGELL PALMER & DODGE LLP
> Attorneys for Plaintiffs
>
>
> s\Robert Novack

Dated: May 27, 2008

NWK 212403.1

## DECLARATION OF SERVICE

I hereby certify on this date, the within Notice of Motion attaching Plaintiff's proposed Amended Complaint, Brief in Support of Plaintiffs Motion to Amend the Complaint, Declaration of Yevgeny Klimov, proposed form of Order and Declaration of Service, were electronically filed with the Motions Clerk and were served on counsel for the defendants by delivering to them via overnight Federal Express at the following address:

> Michael E. Johnson, Esq.
> Alston & Bird LLP
> 90 Park Avenue
> New York, NY 10006

> s\Robert Novack

Dated: May 27, 2008

# EXHIBIT A

NWK 212533.1

EDWARDS ANGELL PALMER & DODGE LLP
Robert Novack, Esq.
750 Lexington Avenue
New York, New York 10022
(212) 308-4411
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

ORCHID ISLAND TRS, LLC (formerly known as Opteum Financial Services, LLC) and BIMINI CAPITAL MANAGEMENT, INC. (formerly known as Opteum Inc.)

　　　　　　　　　Plaintiffs,

v.

INDYMAC BANCORP, INC. and INDYMAC BANK, FSB,

　　　　　　　　　Defendants.

------------------------------------------------

Index No: 07 CIV 9550 (LLS)

**AMENDED COMPLAINT**

　　　　Plaintiffs Orchid Island TRS, LLC ("Orchid"), formerly known as Opteum Financial Services, LLC, and Bimini Capital Management, Inc. ("Bimini"), formerly known as Opteum Inc., by their attorneys, Edwards Angell Palmer & Dodge LLP, as and for their Complaint against Defendants IndyMac Bancorp, Inc. and IndyMac Bank, FSB (collectively, "IndyMac") allege as follows:

## **NATURE OF THE ACTION**

1. This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition, aiding and abetting breach of fiduciary duties, tortious interference with contract, and tortious interference with prospective economic advantage.

2. Plaintiffs seek damages and other relief arising out of Defendant IndyMac's malicious, tortious raiding of Orchid's Northeastern Branch offices in Eatontown, Linden, Paramus, Mt. Arlington and Mt. Laurel/Woodbridge, New Jersey and Albany, New York. IndyMac tortiously solicited Orchid's agents/employees to engage in direct, unfair competition with Orchid, converted Orchid's confidential and proprietary information, tortiously interfered with Orchid's business, and aided and abetted breaches of fiduciary duty by Orchid's former branch managers.

3. On or about March 16, 2007, IndyMac entered into a Confidentiality Agreement with Bimini whereby IndyMac was provided access to highly confidential and proprietary information regarding the compensation, benefits and sales performance of all employees of Orchid, a Bimini subsidiary engaged in, among other things, the retail mortgage loan origination business. IndyMac, which signed the confidentiality agreement as part of its consideration of a potential purchase of the operating platform, residuals, servicing rights and/or other assets relating to the subprime/prime residential mortgage origination business of Bimini (i.e., Orchid), agreed to use the confidential and proprietary information solely for the purpose of evaluating the merits of a possible transaction, and for no other purpose.

4. When negotiations between the parties ended on or about May 7, 2007, IndyMac began the wholesale solicitation of key Orchid employees, including its branch managers, whose confidential compensation, benefits and performance records had just been provided by Bimini

- 2 -

to IndyMac, to leave Orchid and join IndyMac. IndyMac's unlawful misuse of the confidential information was designed to disrupt a pending transaction for the sale of Orchid's retail mortgage loan origination business to a third party, by stealing away its key sales and management employees on the very eve of consummation of that transaction. IndyMac's improper solicitations have caused substantial damages to Bimini and Orchid. As a result of IndyMac's improper solicitations and wrongful conduct, Plaintiffs were forced to renegotiate the sale of Orchid's retail mortgage loan origination business resulting in a reduction of the purchase price by approximately $3.5 million, and were forced to retain leases for commercial office space which were no longer needed resulting in additional losses.

## THE PARTIES

5.      Plaintiff Orchid Island TRS, LLC, formerly known as Opteum Financial Services, LLC, is a majority-owned subsidiary of Bimini Capital Management, Inc., a publicly held real estate investment trust. Orchid is a Delaware limited liability company, whose principal place of business was Bergen County, New Jersey at all times prior to July 20, 2007, and whose current principal place of business is Florida. The members of Orchid are Bimini (a Maryland corporation, with its principal place of business in Florida) and Citigroup Global Markets Realty Corp. ("Citigroup") (a New York corporation, with its principal place of business in New York).

6.      Plaintiff Bimini Capital Management, Inc., formerly known as Opteum Inc., is a Maryland corporation, with its principal place of business in Florida.

7.      Defendant IndyMac Bancorp, Inc., the holding company for IndyMac Bank, F.S.B., is a Delaware corporation with its principal place of business in California.

8.      Defendant IndyMac Bank, F.S.B. is a federally chartered corporation with its principal place of business in California. Upon information and belief, Orchid's retail mortgage

loan origination business formerly conducted in Orchid's Northeast regional branches is now conducted by defendants, and Orchid's former employees that were previously employed in Orchid's Northeast regional branches are now employed by defendant IndyMac Bank, FSB or a related entity.

### JURISDICTION AND VENUE

9. The United States District Court for the Southern District of New York has *in personam* jurisdiction over Defendants because they conduct business in New York. In addition, the Confidentiality Agreement between the parties contains the following provision: "The parties hereby consent to the exclusive jurisdiction of, and venue in, any federal or state court of competent jurisdiction located in the Borough of Manhattan, New York City for the purpose of adjudicating any matter arising from or in connection with this Agreement." See Exhibit A to Plaintiffs' Complaint dated October 25, 2007, at ¶14 ("Compl.").

10. The United States District Court for the Southern District of New York has jurisdiction of this action under the jurisdictional provisions of 28 U.S.C. §1332(a) in that the matter in controversy exceeds $75,000 exclusive of interest and costs, and is between citizens of different states.

11. Venue in this district is proper pursuant to 28 U.S.C. §1391 (a).

### STATEMENT OF FACTS

12. Orchid is a majority-owned subsidiary of Bimini, a publicly held real estate investment trust. Among other things, Orchid engaged in the business of originating residential mortgage loans throughout the United States.

13. Upon information and belief, IndyMac engages in the same or similar business throughout the United States. IndyMac and Orchid were, therefore, competitors in the residential mortgage loan origination business.

14. In the early part of 2007, Bimini offered to sell Orchid's retail residential mortgage loan origination business. Bimini considered indications of interest from several parties, including IndyMac.

15. In order to allow IndyMac to explore a possible acquisition of Orchid's retail residential mortgage loan origination business, Bimini and IndyMac entered into a Confidentiality Agreement, dated as of March 16, 2007. (Exhibit A to Plaintiffs' Compl.). The Confidentiality Agreement governed the due diligence process undertaken by IndyMac.

16. Pursuant to Paragraph 1 of the Confidentiality Agreement, Bimini agreed to provide IndyMac access to "confidential and proprietary information" "solely for the purpose of evaluating a potential Transaction" between the parties. All of the materials, documents, data and information provided to IndyMac was described in the Confidentiality Agreement as "Evaluation Material."

17. Pursuant to Paragraph 2 of the Confidentiality Agreement, IndyMac agreed, among other things, "not to use any such Evaluation Material except in connection with the Transaction and to determine whether IndyMac or one of its subsidiaries or affiliates wishe[d] to enter into a Transaction and to evaluate the Transaction and the terms thereof."

18. The retail residential mortgage loan origination business is essentially a "people business." The transaction by IndyMac would have been an asset purchase, but the fixed assets pertaining to the business are limited. In reality, what was being sold was access to key Orchid sales and management employees who, based on experience, contacts, and salesmanship,

generate the residential mortgage loan originations (known as "production") that made Orchid an attractive business.

19. On March 28, 2007, IndyMac and Bimini entered into a non-binding Letter of Intent with respect to the contemplated transaction. (Exhibit B to Plaintiffs' Compl.). The Letter of Intent made clear that the "retention" of Orchid employees was a critical component of the proposed transaction. Paragraph 4 of the Letter of Intent, for example, stated that IndyMac "anticipates offering employment to substantially all employees directly involved in the Division [being sold] . . . ." and "anticipate[s] as a condition to closing of the Transaction that retention of sales employees representing a material percentage of historical retail production volume be achieved and that certain key producers accept employment agreements with IndyMac." IndyMac also stated its intention to provide Orchid employees with a "compensation and benefits arrangement . . . no less favorable than those provided by [IndyMac]."

20. Paragraph 5 of the Letter of Intent set forth various "conditions" to any transaction, included among which were IndyMac's "reaching an agreement with sales management with respect to their ongoing roles as managers" and "retention of sales employees representing a material percentage of historical retail production volume and acceptance of employment agreements with IndyMac by certain key producers."

21. Finally, the parties' Letter of Intent made clear that the principal focus of IndyMac's due diligence in connection with the proposed transaction was to be a review of the confidential and proprietary compensation, benefits and production information for all Orchid employees. Paragraph 7 indicated that, among other things, IndyMac's due diligence would "[s]pecifically . . . focus on" "[r]eview of loan officer and sales management compensation structures and employment contracts."

22.    On May 7, 2007, Bimini determined not to pursue further negotiations with IndyMac concerning a possible sale of Orchid's retail residential mortgage loan origination business, and so advised IndyMac.

23.    Bimini continued negotiations with another party for the sale of Orchid's retail residential mortgage loan origination business and, on May 7, 2007, Bimini, Orchid and Prospect Mortgage Company, LLC ("Prospect Mortgage") entered into an Asset Purchase Agreement. Bimini's agreement with Prospect Mortgage was publicly announced on May 7, 2007, and the Asset Purchase Agreement, less certain exhibits and schedules setting forth confidential and proprietary information of Bimini and Orchid, was filed with the Securities and Exchange Commission.

24.    Beginning at or about the same time the transaction with Prospect Mortgage was announced, IndyMac, utilizing the confidential information it had obtained full access to during the due diligence process, embarked upon a campaign of targeting for solicitation leading Orchid salespeople and management personnel. IndyMac actively solicited and hired a large number of such individuals. IndyMac induced several such individuals to abruptly terminate employment with Orchid and join IndyMac by, upon information and belief, offering compensation packages that IndyMac knew exceeded those currently paid by Orchid.

25.    The goal of this unlawful campaign was to obtain the benefits of the transaction IndyMac contemplated entering into with Bimini without paying for it. Under the terms of its agreement with Prospect Mortgage, should Bimini fail to deliver Orchid employees responsible, in the aggregate, for a minimum percentage of the production of the preceding 12-month period, Prospect Mortgage, at its sole option and without penalty, may choose not to proceed with the transaction. Upon information and belief, IndyMac was fully aware of this condition in the

agreement with Prospect Mortgage because a similar provision was contained in drafts of the asset purchase agreement negotiated between IndyMac and Bimini, and because the Prospect Mortgage agreement is on file with the SEC and thus publicly available.

26. Since IndyMac's campaign of solicitation began, the following individuals terminated their employment with Orchid and joined IndyMac:

- John Palmiotto, Orchid's former Senior Vice President, Northeast Regional Manager. Mr. Palmiotto gave Orchid one (1) day's notice of his departure. Working directly under Mr. Palmiotto are sales personnel who, collectively, generated in excess of 20% of Orchid's production for the previous 12-month period.

- Upon information and belief, each of the individuals on the list attached at Plaintiffs' Compl. Exh. C.

27. On May 23, 2007, Bimini delivered a letter to IndyMac demanding that it immediately cease and desist from further solicitation of Orchid employees based upon IndyMac's misuse of Bimini's confidential information in violation of the Confidentiality Agreement, and demanding assurance that IndyMac would not undertake such activities in the future. Upon information and belief, IndyMac continued its unlawful solicitations subsequent to its receipt of Bimini's cease and desist letter.

28. Plaintiffs have commenced an action in New Jersey Superior Court, Bergen County, alleging the same conduct against certain former Orchid employees who terminated their employment with Orchid and joined IndyMac contrary to their employment agreements.

29. Under Paragraph 12 of the Confidentiality Agreement, Bimini is entitled to recover its reasonable legal fees if forced to enforce its rights thereunder.

## COUNT I
## BREACH OF CONTRACT

30. Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

NWK 212816.1

31. Bimini fully performed its obligations under the Confidentiality Agreement by providing IndyMac with access to confidential compensation, benefits and production information for employees of Orchid, for the sole purpose of allowing IndyMac to evaluate the merits of a potential purchase of Orchid's retail mortgage loan origination business.

32. Under Paragraph 2(a) of the Confidentiality Agreement, IndyMac was obligated "not to use [Bimini's] Evaluation Material (as defined in ¶1 of the Confidentiality Agreement) except in connection with the Transaction and to determine whether IndyMac or one of its subsidiaries or affiliates wishes to enter into a Transaction and to evaluate the Transaction and the terms thereof."

33. Under Paragraph 12 of the Confidentiality Agreement, IndyMac agreed and acknowledged that Bimini "may be irreparably harmed by breach of this Agreement by IndyMac, its affiliates or Representatives and that money damages may not be a sufficient remedy for any such breach and that [Bimini] may be entitled to seek equitable relief, including injunctive relief and specific performance, as a remedy for any such breach (which shall be in addition to any other remedies at law or in equity to [Bimini])."

34. IndyMac breached the Confidentiality Agreement by misusing the Evaluation Material, specifically, confidential information concerning the compensation, benefits and sales production of key employees of Orchid, in order to solicit and induce such employees to terminate their employment with Orchid and join IndyMac. IndyMac's campaign of solicitation and inducement, made possible only through its misuse of Bimini's Evaluation Material in breach of the Confidentiality Agreement, disrupted consummation of a contemplated sale of Orchid's retail mortgage loan origination business to a third party, Prospect Mortgage.

35.    As a direct and proximate result of IndyMac's breach of the Confidentiality Agreement, Plaintiffs have suffered damages.

### COUNT II
### BREACH OF IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

36.    Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

37.    Implied in every contract entered into in New York is a covenant of good faith and fair dealing. The Confidentiality Agreement is governed by New York law.

38.    Bimini fully performed its obligations under the Confidentiality Agreement, including the implied covenant of good faith and fair dealing.

39.    IndyMac breached the Confidentiality Agreement by, among other things, using the confidential compensation information it obtained access to during the due diligence process for a purpose never intended by the parties, namely, to induce Orchid producers and management personnel to leave Orchid and join IndyMac (some in violation of their Employment Agreements) just as Bimini was concluding a transaction with Prospect Mortgage for the sale of the retail mortgage loan origination business. By doing so, IndyMac acted in bad faith and in violation of the implied covenant of good faith and fair dealing in the Confidentiality Agreement. IndyMac's actions were intended to and did deprive Bimini of the benefits it was entitled to under the Confidentiality Agreement.

40.    As a direct and proximate result of IndyMac's breach, Plaintiffs have suffered damages.

## COUNT III
## UNFAIR COMPETITION

41. Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

42. IndyMac obtained access to Bimini's Evaluation Material and confidential information regarding the compensation, benefits and production of Orchid's loan officers and management personnel, solely in the course of the due diligence process.

43. IndyMac was obligated under the terms of the Confidentiality Agreement to use such confidential information solely for the purpose of exploring the merits of a possible acquisition of Orchid's retail mortgage loan origination business and for no other purpose.

44. IndyMac, a competitor of Orchid in the retail mortgage loan origination business, misused the confidential information to wrongfully solicit and induce Orchid employees to terminate their employment and join IndyMac.

45. The purpose of IndyMac's actions was to harm Plaintiffs by interfering with and derailing the sale of Orchid's retail mortgage loan origination business to Prospect Mortgage, a transaction that IndyMac had hoped to consummate with Bimini.

46. IndyMac's intent and actions are wrongful and constitute unfair competition.

47. As a direct and proximate result of IndyMac's conduct, Plaintiffs have suffered damages.

## COUNT IV
## AIDING AND ABETTING OF
## BREACH OF FIDUCIARY DUTIES

48. Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

49. Under New York law, a third party who knowingly aids and abets an agent of another in breach of fiduciary duty is liable to the principal.

50. IndyMac used Evaluation Material and confidential information regarding key Orchid employees, including compensation, benefits and performance records, that IndyMac obtained during negotiations with Bimini and that was subject to a strict confidentiality agreement, to aid and abet the Orchid employees in breaching their fiduciary duties and duty of loyalty to Orchid and breaching their Employment Agreements, by raiding Orchid's northeast branch offices of all of its employees.

51. IndyMac is chargeable with knowledge that the Orchid employees, as managers and employees of Orchid, owed fiduciary duties and a duty of loyalty to Orchid as their employer.

52. IndyMac participated in the Orchid employees' breach of their fiduciary duties and duty of loyalty to Orchid by soliciting and hiring the Orchid employees' subordinates and by using the confidential and proprietary information obtained by the Orchid employees during their employment with Orchid.

53. IndyMac is liable for the proximate consequences of the Orchid employees' breach of their fiduciary duties and duty of loyalty and breach of Employment Agreements, which inured to IndyMac's benefit.

54. As a direct and proximate result of IndyMac's conduct, Plaintiffs have suffered damages.

### COUNT V
### TORTIOUS INTERFERENCE WITH CONTRACT

55. Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

56. IndyMac misused Plaintiffs' confidential information to wrongfully solicit and induce Orchid employees to terminate their employment and breach their Employment Agreements with Orchid and join IndyMac.

57. The purpose of IndyMac's actions was to harm Bimini by interfering with and derailing the sale of Orchid's retail mortgage loan origination business to Prospect Mortgage, a transaction that IndyMac had hoped to consummate with Bimini.

58. IndyMac's intent and actions were wrongful and constitute tortious interference with contract.

59. As a direct and proximate result of IndyMac's conduct, Plaintiffs have suffered damages.

## COUNT VI
## TORTIOUS INTERFERNCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

60. Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

61. IndyMac misused Plaintiffs' confidential information and Evaluation Material to wrongfully solicit and induce Orchid employees to terminate their employment with Orchid and join IndyMac.

62. The purpose of IndyMac's actions was to harm Bimini by interfering with and derailing the sale of Orchid's retail mortgage loan origination business to Prospect Mortgage, a transaction that IndyMac had hoped to consummate with Bimini.

63. IndyMac's intent and actions are wrongful and constitute tortious interference with prospective economic advantage.

64. As a direct and proximate result of IndyMac's conduct, Plaintiffs have suffered damages.

## COUNT VII
## COMPUTER-RELATED OFFENSES ACT, N.J.S.A. 2A:38A-3

65. Plaintiffs repeat and reallege each of the foregoing paragraphs of the Complaint.

66.     Defendants, through their agents and employees, purposefully and knowingly, and without authorization, accessed computers and computerized data that are the property of plaintiffs and that are located in New Jersey for the purpose of communicating with plaintiffs' employees regarding future employment and business relationships in direct competition with plaintiffs, and for the purpose of obtaining and converting to their own use confidential and proprietary financial and business information contained therein.

67.     Defendants' purposeful, knowing, and unauthorized access to plaintiffs' computers caused damage to the business and property of plaintiffs.

WHEREFORE, Plaintiffs hereby demand judgment against IndyMac as follows:

(a) awarding Plaintiffs compensatory damages in such sum as shall be proved at trial, plus interest as provided by law;

(b) awarding Plaintiffs punitive damages;

(c) awarding Plaintiffs interest as provided by law;

(d) awarding Plaintiffs the costs of suit, costs of investigation and litigation, and reasonable attorneys' fees; and

(b) awarding Plaintiffs such other relief as the Court deems just and proper.

EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
(212) 308-4411


By: s\Robert Novack
    Robert Novack
    Attorneys for Plaintiffs

Dated: May 27, 2008

- 15 -

NWK 212816.1