# EXHIBIT B

**From:** The Kowalski's
**Sent:** 5/17/2007 8:47:28 AM
**To:** Craig Kowalski
**Subject:** Fw: Lender Services Agreement

----- Original Message -----
From: Johnson, Scott H. <mailto:SJohnson@nymc.com>
To: craigkowalski@optonline.net
Sent: Tuesday, May 15, 2007 1:46 PM
Subject: FW: Lender Services Agreement

Here you go….

Scott Johnson

Divisional President

RLG - East

The New York Mortgage Company

a division of Indymac Bank

Phone: 800-392-6167

Fax: 888-659-4348

sjohnson@nymc.com

www.nymc.com

_____

_____

From: Gannon, Scott J.
Sent: Monday, May 14, 2007 5:28 AM
To: Johnson, Scott H.
Subject: RE: Lender Services Agreement

Here it is

J. Scott Gannon

Vice President/Branch Manager

Private Banking

The New York Mortgage Company

A division of Indymac Bank

Phone 617-928-5467

Fax 617-928-5494

sgannon@nymc.com

www.nymc.com <http://www.nymc.com/>

_____

From: Johnson, Scott H.
Sent: Saturday, May 12, 2007 12:53 PM
To: Gannon, Scott J.
Subject: Lender Services Agreement

S,

Don't forget to send me the Lender's Services Agreement.

Thanks,

S


Scott Johnson

Divisional President

RLG - East

The New York Mortgage Company

a division of Indymac Bank

Phone: 800-392-6167

Fax: 888-659-4348

sjohnson@nymc.com

www.nymc.com <http://www.nymc.com/>

_____

This message contains information which may be confidential and privileged.
Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone
the message or any information contained in the message.  If you have received the message in error, please advise
the sender by reply e-mail @nymc.com, and delete the message.
Thank you.

Attachment: NYMC Lender Services Agreement.Redacted (2005).pdf

Attachment: NYMC Marketing Services Agreement vF.doc

Attachment: image001.gif

## THE NEW YORK MORTGAGE COMPANY, LLC
## LENDER SERVICES PROGRAM AGREEMENT

This AGREEMENT (Agreement) is entered into as of the effective date indicated on the signature page of this Agreement (Effective Date) by and between **THE NEW YORK MORTGAGE COMPANY, LLC** ("NYMC) and the party identified on the signature page of this Agreement as "Broker" (Broker) (collectively, the "parties").

W I T N E S S E T H:

WHEREAS, NYMC is a mortgage lender providing financing for the purchase and refinance of real estate; and

WHEREAS, Broker is the type of depository institution identified on the signature page of this Agreement and desires to perform certain mortgage loan origination services in connection with consumers assisted by Broker ("Consumers") and submit pre-qualification or loan application worksheets and related materials (collectively, "Packages") with regard to potential mortgage loans to NYMC for approval under NYMC's Lender Services Program (the "Program"); and

WHEREAS, Broker and NYMC believe that it is in their mutual best interests to enter into this Agreement.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, Broker and NYMC agree as follows:

1.  During the term of this Agreement, in addition to all other obligations and responsibilities contained herein and in the Lender Services Program (of which this Agreement is a part), when Broker desires to originate a Package for submission to NYMC under the Program, Broker shall perform the services listed on Exhibit A attached hereto. Upon agreement of NYMC and Broker, the type or level of services may be changed, and any changes shall be reflected in Exhibit A. Additionally, without changing the services set forth in Exhibit A, upon approval of NYMC, Broker may perform a different type or level of services for a particular transaction. Broker shall submit Packages resulting from the services to NYMC for review. By submitting a Package to NYMC, Broker assigns all right, title and interest in and to the Package to NYMC.

2.  Broker represents and warrants to NYMC the following on the date hereof and on the date Broker performs any of its services hereunder (including without limitation, on the date that Broker submits a Package to NYMC):

    A.  Broker is duly organized, validly existing and in good standing under federal law or the law of the state in which it is chartered, as applicable, and has full power and authority to enter into, and perform the services contemplated by, this Agreement.

    B.  Broker is familiar and has complied with, and agrees to continue to comply with, all federal, state and local laws, ordinances and regulations governing loan processing, loan

brokering and the services of Broker contemplated by this Agreement. Each Package submitted by Broker to NYMC was originated in accordance with, and satisfies all requirements of, all applicable federal, state and local laws and all other requirements and guidelines of NYMC (as may from time to time be issued or modified by NYMC) and of all relevant investors, agencies and insurers (collectively, the "Applicable Requirements").

C.  Broker is not, and has never been, the subject of governmental enforcement proceedings, and is not currently subject to any governmental investigation or inquiry, regarding Broker's mortgage loan related activities, except for proceedings, investigations or inquiries that have been disclosed to NYMC in writing.

D.  Broker is not on the FHLMC exclusionary list and does not, and will not employ any entity or individual that is.

E.  There are no pending or, to Broker's knowledge, threatened actions, suits or proceedings, or any existing judgments, garnishments or claims of lien, against Broker, which, if determined adversely to Broker, would have a material adverse effect on the financial condition, properties or operations of Broker. Broker has not filed or been the subject of a petition under any federal or state bankruptcy, insolvency or reorganization law within the five (5) year period preceding the Effective Date.

F.  The undersigned party, appearing on behalf of Broker, has full authority to represent, bind and enter into this Agreement on behalf of Broker, and upon such execution hereof, this Agreement shall constitute a legal, valid and binding obligation of Broker enforceable against Broker according to its terms.

G.  The execution and delivery of this Agreement by Broker and the performance by Broker of its obligations hereunder do not and will not violate the charter or other organizational documents of Broker, any agreement to which Broker is a party, or any provision of any law, rule or regulation applicable to Broker.

3.  In performing its services under this Agreement, Broker agrees to comply with the Applicable Requirements, including without limitation the requirements and guidelines of NYMC that are in effect during the relevant time. Without limiting the foregoing, to the extent required by Applicable Requirements, Broker shall enter into an agreement with each Consumer regarding the services to be provided by Broker in connection with a Package. Additionally, and without limiting the foregoing, Broker shall perform services under this Program, and originate Packages for submission to NYMC under the Program, only in connection with conventional mortgage loans of the type designated in writing by NYMC, and such other mortgage loans as may be deemed eligible in writing by NYMC. Broker may originate Packages for submission to NYMC only in the states or territories designated by NYMC. Without limiting the foregoing sentence, if Broker is a state chartered depository institution, Broker shall only be permitted to submit Packages for potential mortgage loans that would be originated in the state in which Broker is chartered, unless NYMC approves in writing one or more additional states or any territories. If Broker desires approval for one or more additional states or any territories, Broker must request the approval from NYMC in writing. In connection with the consideration of the request by NYMC,

if deemed necessary by NYMC, Broker shall be required to demonstrate that it holds the appropriate licenses or other approvals to originate Packages in the applicable states or territories and satisfies the requirements for holding the licenses or other approvals. If approval is granted by NYMC with respect to a state or territory in which licensing or another approval is deemed necessary by NYMC, on each annual anniversary of the Effective Date, Broker shall be required to demonstrate that it continues to hold the necessary licenses or approvals and satisfies the requirements for holding the licenses or other approvals.

4.  NYMC shall review Packages submitted by Broker. NYMC acknowledges to Broker that it shall use its standard pre-qualification, underwriting and loan approval procedures in making determinations on Packages submitted by Broker. However, Broker acknowledges and agrees that all decisions regarding Packages shall be made in the sole and absolute discretion of NYMC. Without limiting the foregoing, NYMC shall have no obligation or liability with respect to any decision made in connection with a Package, or with respect to the period taken by NYMC to review, or take other actions in connection with, a Package. Broker shall have no right, power or authority, express or implied, to (a) approve or otherwise make a determination with respect to a Consumer's credit request or credit inquiry, orally or in writing, on behalf of NYMC, to (b) issue to Consumers any type of binding commitment to loan funds on behalf of NYMC, (c) represent to any Consumer that NYMC will approve the Consumer's credit request or make a particular determination with respect to the Consumer's credit request or credit inquiry, (d) represent to a Consumer that NYMC has made a particular determination with regard to the Consumer's credit request or inquiry when NYMC has not done so, or make a representation to a Consumer that is inconsistent with NYMC's determination regarding the Consumer's credit request or inquiry or (e) make an interest rate quote to, or lock in an interest rate for, a Consumer, orally or in writing, on behalf of NYMC.

5.  For performing the services described in this Agreement with respect to a Package, Broker will be paid a fee representing the fair market compensation for all such services in the marketplace in which they are provided, in the amount set forth on the pricing schedule to be provided to Broker by NYMC from time to time. NYMC will pay this fee to Broker if such services are completely and timely performed in accordance with this Agreement, the Package results in a mortgage loan that is closed and funded by NYMC (a "Mortgage Loan"), and the Mortgage Loan is not rescinded.

6.  Broker and NYMC agree that the Lender Services Program under which this Agreement is to operate is dependent upon the good faith and honest and complete disclosure of information required of both Broker and Consumers in connection with Packages. Broker agrees that NYMC shall make all decisions with regard to Broker's continuing eligibility to participate in the Lender Services Program of NYMC. Broker agrees to be bound by all such decisions with no further right of redress, remedy or appeal. Broker agrees to fully cooperate with and assist NYMC in obtaining any additional information and documentation that NYMC deems necessary in order to underwrite and close any loan and to accomplish the transactions contemplated hereunder. Broker shall immediately notify NYMC (a) of any dispute involving a Consumer, or any claim or threatened claim by a Consumer, with respect to the services performed by Broker under this Agreement, (b) of any inquiry or complaint by a government agency regarding the services performed by Broker under this Agreement or a Package, (c) of an adverse finding made, or

adverse action taken, by a government agency with respect to, or that may adversely affect the ability of Broker to perform, the services contemplated by this Agreement (including without limitation an adverse finding made, or adverse action taken, with respect a license or other approval pursuant to which Broker performs the services), or (d) of any changes that would prohibit Broker from complying with this Agreement.

7.  Broker further represents and warrants to NYMC the following on the date hereof and on the date Broker performs any of its services hereunder (including without limitation, on the date that Broker submits a Package to NYMC):

    A.  Broker shall not enter into agreements, undisclosed to NYMC, with (i) the Consumer, (ii) the seller of the property to be secured by a Mortgage Loan, or (iii) the Consumer and the seller of the property to be secured by a Mortgage Loan that would reasonably affect the loan application decision;

    B.  Broker shall inform NYMC of every circumstance where there are any pending lawsuits, bankruptcies, or other administrative actions, or any valid legal defensewhich could adversely affect the collectibility of a proposed Mortgage Loan;

    C.  With respect to a Package submitted to NYMC by Broker, all information contained in the Package is true and correct in all material respects, no document contained in the Package fails to accurately reflect the matters addressed by the document, and no fraud of any kind has been committed in connection with the Package;

    D.  Broker has no knowledge of any detrimental factors relating to the credit-worthiness of the Consumer or, if applicable, the property that would be the security property for the Mortgage Loan that (i) would adversely affect the value or marketability of the loan or security property, (ii) cause the loan to become delinquent or (iii) be contrary to any information submitted to NYMC in, or in connection with, a Package;

    E.  At the time of the delivery of a Package to NYMC, Broker has good and marketable title thereto, free and clear of all liens, encumbrances, charges and/or rights of others and the Broker will warrant and defend title thereto.

8.  Subject to applicable laws, NYMC agrees to provide notice to Broker of the decisions concerning Packages submitted by Broker. In connection with Packages, NYMC agrees to use its best efforts to apply the same underwriting standards to similar loans submitted under equivalent loan programs during the course of this Agreement.

9.  Broker hereby agrees and acknowledges that NYMC may conduct an initial credit background check of Broker and may, during the course of this Agreement, conduct periodic credit background checks. Broker hereby authorizes NYMC to conduct such initial and periodic credit checks, and such authorization shall remain effective during the term of this Agreement.

10. For further valuable consideration by and between these parties, the receipt, adequacy and sufficiency of which is hereby acknowledged, Broker hereby covenants not to sue NYMC for

any act, omission, negligence, claim, loss, damages or expenses whatsoever, whether caused by or committed by NYMC or not.

11.    Broker and NYMC acknowledge and understand that this Agreement does not constitute an obligation or commitment on the part of either party to submit, purchase, approve or fund any specific Package or loan, nor an obligation of Broker to sell or deliver to NYMC any specific Package or loan under the Lender Services Program.

12.    During the term of this Agreement, and for a period of eighteen (18) months thereafter, Broker shall not, directly or indirectly, hire or solicit for employment any NYMC employee, or any person who was an NYMC employee within six (6) months prior to any such attempted hiring or solicitation, and Broker shall prevent any affiliate from, directly or indirectly, hiring or soliciting for employment any NYMC employee or any person who was an NYMC employee within six (6) months prior to any such attempted hiring or solicitation. Additionally, during the term of this Agreement, and for a period of three (3) years thereafter, Broker shall not, directly or indirectly, solicit, and Broker shall prevent any affiliate from, directly or indirectly, soliciting, any borrower whose mortgage loan is owned or serviced by NYMC for purposes of prepayment, refinance or modification of the loan. Upon termination of this Agreement, Broker shall not, directly or indirectly, advise or solicit, and Broker shall prevent any affiliate from directly or indirectly advising or soliciting, a Consumer to withdraw, cancel or cease pursuing a pre-qualification inquiry or mortgage loan application with NYMC. Promotions undertaken by Broker that are directed to the general public at large, such as by way of newspaper, magazine, radio, television or Internet advertisements, shall not constitute a solicitation.

13.    Broker shall indemnify and hold NYMC harmless from any damage, loss or expense (including attorneys' fees and all costs of investigation, settlement and appeal) resulting from (i) any non-performance of Broker's obligations or covenants, (ii) the breach or inaccuracy of any representation or warranty of Broker hereunder, (iii) any acts or omissions of Broker or its employees or agents, regardless of whether such acts or omissions were willful, negligent or otherwise, (iv) false representations, warranties or statements made by the Consumer to Broker or in any materials included in the related Package, or any fraud on the part of the Consumer in connection with the Package and (v) any fraud in connection with a Package on the part of Broker. In addition, in the event that NYMC has incurred, or is reasonably likely to incur, any damage, loss or expense resulting from, or an investor or other applicable third party has requested or demanded the repurchase of a Mortgage Loan as a result of, any event or circumstance described in the immediately preceding sentence, Broker shall repurchase from NYMC any affected Mortgage Loan immediately following Broker's receipt of a repurchase demand from NYMC. Broker's obligations under this Section shall be fully applicable regardless of whether NYMC has underwritten or approved the related Mortgage Loan and regardless of the contents of the Package. The purchase price to be paid by Broker to NYMC in connection with any such Mortgage Loan purchase shall be equal to the sum of, as of the time of purchase, (a) the unpaid principal balance of, plus accrued and unpaid interest on, the loan, (b) any unreimbursed advances made by NYMC pursuant to the Applicable Requirements in connection with the loan and interest thereon at the interest rate set forth in the related promissory note, and (c) any other costs and expenses (including attorneys' fees and all costs of investigation, settlement and appeal) incurred by NYMC in connection with the loan and interest thereon at the interest rate set forth in the related

promissory note. Without limiting the foregoing, Broker shall indemnify and hold NYMC harmless from all damage, loss or expense (including attorneys' fees and all costs of investigation, settlement and appeal) related to such Mortgage Loan and its repurchase, including, without limitation, any loss resulting from NYMC's re-sale of the loan following repurchase.

14.     Broker shall not use, publish or distribute any type of advertising material, letter, stationery, newsletter, form, disclosure, document or other material that contains the name or any trade mark, service mark or logo of NYMC.

15.     This Agreement may be terminated by either party for any reason at any time upon notice to the other party. If NYMC terminates this Agreement for cause, or if Broker terminates this Agreement, then NYMC shall have no obligation to close any loan in connection with which Broker performed services hereunder, regardless of whether a commitment has been issued prior to delivery of the notice of termination. Termination of this Agreement shall not relieve either party of any liability to the other party for any damages or other amounts due hereunder; provided that Broker shall not be entitled to the fee provided for in Section 5 with respect to a Package unless all conditions set forth in Section 5 regarding payment of the fee are satisfied. The provisions of Sections 10 and 12 through 17 hereof shall survive any termination of this Agreement.

16.     In the event that Broker owes any amount to NYMC hereunder or under any other agreement, understanding or arrangement between Broker and NYMC, then NYMC shall have the right, without notice, to deduct any and all of such amounts from amounts that otherwise would be payable hereunder by NYMC to Broker.

17.     Unless NYMC provides its prior express written consent to Broker, during the term of this Agreement or at any time thereafter, Broker shall not, directly or indirectly, use any Confidential Information (as defined below) in any way, or divulge, disclose or make available or accessible any Confidential Information to any person, firm, partnership, corporation, trust or any other entity or third party, other than when required to do so in good faith to perform Broker's services contemplated by this Agreement or when required to do so pursuant to a subpoena or other order of a court of competent jurisdiction, or pursuant to a governmental audit or examination of Broker. Also, Broker shall deliver to NYMC at the time of the termination of this Agreement, and without retaining any copies, notes or excerpts thereof, all Confidential Information, in any form, that is in Broker's actual or constructive possession or that is subject to Broker's control at such time.

"Confidential Information" means all information respecting the business and activities of NYMC, any subsidiary or affiliate of NYMC, or any joint venture in which NYMC participates, including, without limitation, the terms and provisions of this Agreement, the clients, customers, suppliers, employees, consultants, computer or other files, projects, products, computer disks or other media, financial information, methodologies, know-how, processes, practices, approaches, projections, forecasts, formats, systems, data gathering methods and/or strategies of NYMC, any subsidiary or affiliate of NYMC, or any joint venture in which NYMC participates, but does not include any information that is, or becomes, generally available to the public (unless such availability occurs as a result of Broker's breach of any portion of this Section or any other obligation Broker owes to NYMC or to subsidiaries or affiliates of NYMC). If Broker has a

relationship with a person that is not related to the services contemplated by this Agreement, Broker's knowledge with respect to such relationship shall not be deemed Confidential Information.

Broker expressly acknowledges and agrees that NYMC's remedy at law for a breach or threatened breach of any of the provisions of this Section or Sections 12 and 14 would be inadequate. In recognition of that fact, in the event of a breach or threatened breach by Broker of the provisions of this Section or Sections 12 and 14, it is agreed that, in addition to its remedy at law and without posting any bond, NYMC shall be entitled to, and Broker agrees (if NYMC establishes that a breach or threatened breach has occurred) not to oppose NYMC's request for, equitable relief in the form of a temporary restraining order, a temporary or permanent injunction, or any other equitable remedy that may then be available. Nothing herein contained shall be construed as prohibiting NYMC from pursuing any other remedies available to it for such breach or threatened breach.

18.   This Agreement represents the entire agreement between Broker and NYMC and no oral representation, promise or inducement, or written agreement with respect to the subject matter hereof, made prior to the execution of this Agreement shall be valid or binding upon either party. This Agreement may not be amended without the prior written consent of both parties.

19.   This Agreement shall be governed by the laws of the State of New York. Broker and NYMC agree that they shall be bound by the laws, jurisdiction and venue of the State of New York and hereby consent to and agree to the venue and jurisdiction of the State of New York.

20.   All notices and statements to be given under this Agreement are to be in writing, delivered by hand, facsimile, telegram, a nationally recognized overnight express or similar service with package tracking capability, or first class United States mail, postage prepaid and registered or certified with return receipt requested, to the addresses or facsimile numbers, as applicable, set forth on the signature page of this Agreement (which addresses and facsimile numbers may be revised by notice). All notices and statements shall be deemed given, delivered, received and effective upon personal delivery or receipt of facsimile or telegram, one calendar day after sending by overnight express or any similar service or three calendar days after mailing by first class United States mail in the manner set forth above.

21.   This Agreement may be executed in any number of counterparts. Each counterpart so executed shall be deemed an original, but all such counterparts shall together constitute one and the same instrument.

22.   For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires: (a) the use of the singular form includes the plural, and the use of the plural form includes the singular, (b) the use of any gender herein shall be deemed to include the other gender, (c) the captions used in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope or content of this Agreement or any provision hereof, (d) the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision, (e) the term

"include" or "including" shall mean without limitation by reason of enumeration, and (f) each reference to a "Section" of this Agreement shall include all subsections of such Section.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

BROKER                                          THE NEW YORK MORTGAGE COMPANY, LLC

By:_____                      By:_____
Name:_____                      Name:_____
Its:_____                     Its:_____


EFFECTIVE DATE: _____, 200__.

NOTICE ADDRESSES AND FACSIMILE NUMBERS:

The New York Mortgage Company, LLC              Broker:        _____
1301 Avenue of the Americas, 7th Floor                         _____
New York, NY 10019                                             _____
Attention:      Jonathan Foxx                   Attention:
                Chief Compliance Officer
Facsimile No: (212) 621-4758                    Facsimile No:

With a copy to:                                 Type of depository institution:

The New York Mortgage Company, LLC              ☐  National Bank
                                                ☐  Federal Savings Bank/Savings & Loan
_____                         ☐  Federal Credit Union
                                                ☐  State Commercial Bank/Bank & Trust
_____                         ☐  State Savings Bank/Savings & Loan
Attention: Branch Manager                       ☐  State Credit Union
Facsimile No:_____

## EXHIBIT A

### SERVICES

- Complete NYMC Pre-qualification Inquiry Worksheet.

- Advise Consumer regarding the mortgage financing process in general. Explain NYMC mortgage loan products and pricing policies, including variances in closing costs and monthly payments with different loan products and pricing structures.

- Obtain authorization from Consumer for NYMC to obtain credit report and perform credit check, and initiate ordering of credit report.

- Following review of credit report by branch office, advise Consumer regarding potential credit problems revealed by report and action needed to address the problems in connection with an application for a loan.

- At time of completion of Pre-qualification Inquiry Worksheet, to the extent available, collect from the Consumer applicable documents identified on NYMC Pre-qualification Document Checklist.

- If Consumer proceeds with an application for a loan, maintain regular contact with Consumer and real estate agent throughout loan origination process to advise of status, and to obtain documents identified on NYMC Application Document Checklist not previously submitted by Consumer.

## Addendum A
## GRAMM LEACH BLILEY ACT SECURITY AND CONFIDENTIALITY PROVISION

The purpose of this Provision is to ensure that _____, Broker, complies, if necessary, with Sections 501(b) and/or 502(b)(2) of the Gramm-Leach-Bliley Act (the "Act"), the Interagency Guidelines, and applicable rules and regulations and to otherwise secure and protect the confidentiality of The New York Mortgage Company, LLC's ("NYMC") customer/consumer information.

1.  Broker generally agrees to maintain NYMC's Confidential Information (defined below) in confidence and in a secure manner and agrees not to disclose such Confidential Information to any third party or use such Confidential Information except for the limited purposes of carrying out its obligations under the Agreement. "Confidential Information" shall mean any data or information that is proprietary to the disclosing party and not generally known to the public, whether in tangible or intangible form, including, but not limited to, the following information: trade secrets, databases, customer lists, and other customer or consumer specific data deemed to be "nonpublic personal information" under the Rules.

2.  Specifically, with regard to any Confidential Information that is defined as nonpublic personal information under the regulations and that is provided to Broker by NYMC under a Joint Agreement, as defined in 12 C.F.R. § 573.13(c), or under the service provider exception in 12 C.F.R. § 573.14, Broker is prohibited from disclosing or using such information in any manner, except for: (i) carrying out the limited purposes for which NYMC disclosed such information pursuant to the Agreement (the "Purposes"); or (ii) disclosing or using such information in the ordinary course of business to carry out the Purposes, pursuant to an exception in 12 C.F.R. §§ 573.14 or 573.15. The obligations of this paragraph shall remain in effect despite the termination of the Agreement for any reason.

3.  Broker agrees and represents to NYMC that it has implemented security measures designed to meet the objectives of the Interagency Guidelines Establishing Standards for Safeguarding Customer Information as set forth in Section 501(b) of the Act and 12 C.F.R. Parts 568 and 570, as amended.

4.  NYMC has the right to make reasonable requests to inspect, during normal business hours, Broker's security measures, associated audit reports, summaries of test results or equivalent measures taken by Broker to ensure that Broker's security measures meet the objectives of the Guidelines in accordance with the Rules and this Amendment. Notwithstanding the previous sentence, upon request, Broker agrees to promptly provide NYMC with a copy of any audit or test result report that would assist NYMC in evaluating Broker's security measures, including but not limited to, any SAS 70 report covering Broker's operations.

5.  In carrying out the above-described obligations to secure and protect the respective Confidential Information of NYMC, Broker agrees that it will protect the Confidential Information of NYMC with at least the same degree of care that NYMC requires for its own Confidential Information of like nature, or with reasonable care, whichever standard is higher.

6.  At all times ownership of Confidential Information shall remain with NYMC. Broker agrees to purge Confidential Information upon request by NYMC.

7.  Broker and NYMC agree that this security provision supersedes any conflicting language in the Agreement, and that NYMC is relying upon this security provision to the Agreement as a material reason for selecting Broker and entering into the Agreement.

8.  Notwithstanding anything in the Agreement to the contrary and without limiting any legal or equitable rights of NYMC, should NYMC determine in its sole discretion that Broker breached any part of this security provision, then NYMC specifically has the right to terminate the Agreement and such termination shall not create any liability to Broker.

BROKER                                      THE NEW YORK MORTGAGE COMPANY, LLC

By:_____                    By:_____
Name:_____                    Name:_____
Its:_____                   Its:_____

# MARKETING SERVICES AGREEMENT
# (BUILDERS)

This Marketing Services Agreement ("Agreement") is between The New York Mortgage Company, LLC, having an address at 1301 Avenue of the Americas, 7th Floor, New York, NY 10019 ("NYMC"), and _____ _____ ("Company"), having an address at _____, and shall be effective as set forth in Section 5.1 hereof ("Effective Date").

## RECITALS

NYMC is one of the nation's fastest growing residential mortgage lenders. NYMC offers consumers a variety of mortgage loan products, including, but not limited to, fixed and variable rate loans. Company is a residential real estate developer. Company wishes to market to its retail customers ("Customers") the availability of NYMC as a preferred mortgage provider.

NOW, THEREFORE, the parties enter into this Agreement as follows:

## 1.    COMPANY MARKETING RESPONSIBILITIES

### 1.1 Promotional Activities

Company will use commercially reasonable efforts, in compliance with all applicable laws and regulations, to promote the availability of NYMC loan products by performing or providing, at a minimum, four of the seven services in the first category and two of the four services in the second category on an ongoing basis (collectively, "Marketing Responsibilities"). The first category of Marketing Responsibilities is as follows:

- ➢  Displaying prominent NYMC signage inside or outside its sales office or homes for sale (e.g. "Loans Available From NYMC" yard signs in front of selected listed homes or projects);
- ➢  Displaying advertising on the Company web site (such as banners, text, and graphics with hypertext links from the web site for click-through access to NYMC.com or realtors.NYMC.com);
- ➢  Conducting mailing campaigns featuring NYMC loan products to Customers who express interest in purchasing a home (e.g., sign Open House sign-in sheets);
- ➢  Conducting e-mail campaigns promoting NYMC to clients in Company's prospect database or on Company's prospect marketing lists;
- ➢  Conducting co-branded newspaper, radio and/or billboard campaigns including the NYMC logo, tag line and telephone number;
- ➢  Arranging for NYMC sales professionals to participate in special events (such as seminars for Customers or Open House events); and
- ➢  Allowing NYMC to post flyers directed to consumers in the sales offices or branches.

The second category of Marketing Responsibilities is as follows:

- ➢  Arranging for NYMC sales representatives to present products and offering at sales meetings;
- ➢  Providing training regarding the advantages of NYMC's products and services to Company sales representatives;
- ➢  Allowing NYMC to insert flyers and other marketing material in agents' mail boxes and distribute marketing material to agents in the sales offices;
- ➢  Allowing NYMC to place kiosks in lobbies or other mutually agreed upon locations at Company's sites, for the exclusive purpose of displaying signage, flyers, brochures and other NYMC marketing materials. Company shall keep the kiosks stocked with NYMC marketing materials at all times. Company shall maintain the kiosks in a clean, safe, and working condition, and shall promptly notify NYMC in the event a kiosk needs repair. NYMC maintains all ownership rights and interest in the kiosk; and
- ➢  Promoting NYMC products to employees through an intranet, company newsletter or other forms of internal communications.

### 1.2 Builder Professional Marketing Options Checklist

Upon Company's execution of this Agreement, and from time to time as NYMC may request during the term of this Agreement, Company shall provide a completed Builder Professional Marketing Options Checklist to NYMC in the format attached as <u>Exhibit A</u>. In addition, Company shall introduce each Customer who (a) inquires about a home loan, (b) would likely qualify for financing at NYMC, and (c) has provided their consent to such introduction to a designated NYMC representative, if present and available, or, in the alternative, shall promptly transfer contact information such as the Customer's name, address, phone number and e-mail address (if available) to a designated NYMC representative by telephone, fax or e-mail. Upon execution of this Agreement, at least one month before the start of each calendar quarter, Company shall provide a completed business partner profile to NYMC in the format attached as <u>Exhibit B</u>.

### 1.3 Compliance with Laws Applicable to Electronic Mail Solicitations

Company represents and warrants that it shall comply with the content, labeling, opt-out, e-mail address collection methods, and other requirements set forth in the "Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003" (the "CAN-SPAM Act of 2003") and any other applicable federal, state and local law regarding commercial e-mail solicitations.

## 2.  NYMC'S LOAN ORIGINATION RESPONSIBILITIES

NYMC will make available to Customers its standard loan products and programs. Some loan products or programs may not be available in all areas. All Customers will be offered NYMC's then current interest rate and discount point structure, unless Company has entered into a hedge program with NYMC.

NYMC will take applications either at Company's office or one of NYMC's retail branches to accept Customer applications. Information will be disseminated to Customers and applications will be taken by NYMC in compliance with NYMC's standard business practices. NYMC warrants and represents to Company that it will evaluate loan applications, notify loan applicants, and originate mortgage loans for qualified Customers in compliance with all applicable state and federal laws and regulations. NYMC will perform all the tasks necessary to evaluate and close the loan, including consulting the Customers regarding various loan products, taking and processing the application, underwriting, closing, and funding the loan in a timely manner. Loans will be closed in the name of NYMC. In addition, NYMC expects to service most or all of the loans but reserves the right to transfer any mortgage servicing rights in its sole discretion.

## 3.  MARKETING SERVICE FEES TO COMPANY

### 3.1 Initial Marketing Fee

In consideration for Company's performance of the Marketing Responsibilities set forth in Section 1, NYMC shall initially pay Company a monthly fee of _____ ("Marketing Fee") for the remainder of the calendar quarter in which the Agreement is signed ("1st Quarter"), and the following calendar quarter ("2nd Quarter"). The Marketing Fee is based upon the parties' expectation that (a) the fee reflects the reasonable value of the services to be provided and (b) the fee is within NYMC's marketing budget for similar marketing services. The first Marketing Fee shall be paid within thirty (30) days of the Effective Date. Each subsequent Marketing Fee will be paid within the first fifteen (15) business days of the month for the services to be provided during that month. Company agrees to provide NYMC with all necessary information to establish Company as a vendor on NYMC's accounts payable system, including a W-9 (or similar), tax identification number and other documents as necessary.

### 3.2 Subsequent Marketing Fees

Following the third month of the 2nd Quarter and of each subsequent calendar quarter, NYMC will assess the value of the Marketing Responsibilities using the parameters described in Section 3.3. If NYMC determines that the Marketing Fee must be adjusted, it will notify Company of the adjustment no later than ten (10) business days after the beginning of the quarter. The adjustment shall be effective as of the beginning of the quarter. If the parties are unable to mutually agree on the adjustment to the Marketing Fee, either party may immediately terminate this Agreement. The parties acknowledge and agree that under current laws and regulations, including the Real Estate Settlement Procedures Act, the consideration to Company is limited to payment for the services provided and must not be payment of a fee, kickback or other thing of value for the mere referral of settlement

services. NYMC represents that the payment to Company will not result in higher rates, points, or closing costs for Customers.

### 3.3 Monitoring the Marketing Responsibilities

By assigning a source code unique to Company, NYMC will attempt to monitor the number of applications received, the conversion rate from applications to fundings and the average balance of funded loans to assist in evaluating Company's performance of its Marketing Responsibilities. Other factors that NYMC may consider in its assessment include: (a) the marketing costs incurred under this Agreement; (b) the standard marketing costs otherwise incurred by NYMC for the type of services provided by Company; and (c) the fair market value for the type of services provided by Company. Upon request from NYMC, Company shall provide proof of performance of the Marketing Responsibilities. If Company is unable to provide adequate proof of performance within a reasonable time period after NYMC's request, NYMC shall suspend payment of subsequent Marketing Fees and may take further action as provided under this Agreement, up to and including termination of this Agreement under Section 5.3. In no event shall suspension of payment of Marketing Fees to Company under this Section 3.3 constitute a breach of this Agreement by NYMC.

## 4.  MULTIPLE PROGRAM CONFLICTS

NYMC represents to Company that NYMC has relationships with a variety of other service providers where it offers special discounts and benefits (e.g. airline miles). Such other programs and benefits will not be available to Customers where a Marketing Fee is paid to Company for performing marketing services related to such Customer.

## 5.  TERM & TERMINATION

### 5.1 Effective Date
The Agreement shall be effective on _____ ___, 20____.

### 5.2 Initial & Renewal Terms
The term of this Agreement shall be one year. The Agreement shall renew automatically for additional one year periods, unless terminated as provided below.

### 5.3 Termination
Either party may terminate this Agreement if (i) the anticipated results from the marketing efforts performed in good faith do not materialize, (ii) the parties are unable to agree, exercising their reasonable business judgment, upon the amount of the Marketing Fee, (iii) NYMC is unable for any reason, using reasonable business practices, to monitor or assess the value of the Marketing Responsibilities; (iv) either party determines, in its reasonable business and legal judgment, that the relationship hereunder or the payments by NYMC to Company are in violation of applicable law or regulation, (v) either party files for protection under the United States Bankruptcy Code or suffers a material adverse financial event or condition, (vi) either party is instructed by its regulator(s) to cease and desist from the relationship, (vii) either party is acquired by, merged into or consolidated with, another entity, or (vii) either party materially breaches any provision, representation or warranty under this Agreement and fails to cure within 30 days of receiving notice of such breach. Written notice of such termination shall be given not less than seven (7) calendar days before the termination date, except for termination under subsections (iv), (v) or (vi) in which case termination shall be effective upon notification to the other party. This Agreement may also be terminated by either party for any reason or no reason at all by giving the other party written notice thirty (30) days prior to the termination date. Upon termination of the Agreement, Company shall coordinate with NYMC to arrange for pick up of the kiosks, if applicable.

## 6.  TRADEMARKS & SERVICE MARKS

### 6.1 Grant of License
During the term of this Agreement, if requested, the parties grant to the other a non-exclusive, non-sublicensable, non-transferable, royalty-free, worldwide license to use the trade names, service marks, brands and trademarks identified by a party to the other solely in connection with advertising, marketing and promotional activities related to this Agreement (collectively the "Marks").

### 6.2  Copy & Use Restrictions for Marks

A party is not permitted to use any of the Marks of the other party in any fashion without the prior written approval of the party whose Mark is to be used. Use of the Marks is not extended to any third parties without the prior written approval of the party whose Mark is proposed to be used and the party who wishes to use the Mark hereby agrees not to permit such use without the prior written approval of the owner of the Mark. The parties agree that Marks are proprietary to a party and nothing in this Agreement constitutes the grant of a general license for their use. Neither party acquires any right, title or interest in the other party's Marks or the goodwill associated with the Marks. Upon termination of this Agreement, all rights of one party to use the other party's Marks will automatically expire and each party must immediately discontinue use of the other party's Marks, including any extant marketing materials.

### 6.3  Protection of Marks

In accepting this Agreement, the parties agree not to attack the other party's Marks, nor assist anyone in attacking them. The parties further agree not to make any application to register Marks of the other party, nor to use any confusingly similar trademark, service mark, trade name or derivation during the term of this Agreement and thereafter.

## 7.  INDEMNIFICATION

### 7.1  General Indemnity

Each party agrees to indemnify, defend and hold harmless the other party, and its subsidiaries, affiliates, directors, officers, employees and agents, from and against any and all liability, claims, losses, damages, injuries or expenses (including reasonable attorneys' fees and court costs), arising out of a breach of any of its representations or warranties or obligations herein or any of its negligent acts or omissions or willful misconduct in its performance under this Agreement. The party seeking indemnification shall promptly notify the indemnifying party of the existence of such claim and shall give the indemnifying party reasonable opportunity to defend and/or settle the claim at its own expense and with counsel of its own selection. The party seeking indemnification shall cooperate with the indemnifying party and shall at all times have the right to fully participate in, but not control, such defense with its own counsel and at its own expense.

### 7.2  Indemnification by Company

In addition to the foregoing, Company specifically agrees to indemnify against, and hold each of NYMC and its affiliates harmless with respect to all claims, actions, suits or other proceedings, and any and all losses, judgments, damages, expenses and other costs (including reasonable attorneys' fees and court costs), actually incurred in connection with, or which arise out of, result from, or are based upon any breach of its representations and warranties in Section 1.3 with respect to Company's transmittal of electronic mail solicitations in the course of performing its Marketing Responsibilities, including, but not limited to, any violations of the CAN-SPAM Act of 2003.

## 8.  GENERAL PROVISIONS

### 8.1  Privacy of Customer Information

Each party shall comply with all federal, state and local laws, rules, regulations and ordinances governing or relating to privacy rights in connection with its performance under this Agreement including, without limitation, the Gramm-Leach-Bliley Act ("GLB") and its implementing regulations. Each party shall implement such physical and other security measures as shall be necessary to (a) ensure the security and confidentiality of the "nonpublic personal information" of the "customers" and "consumers" (as those terms are defined in GLB) of either party which it holds, (b) protect against any threats or hazards to the security and integrity of such nonpublic personal information, and (c) protect against any unauthorized access to or use of such nonpublic personal information. Each party represents and warrants that it has implemented appropriate measures to meet the objectives of Section 501(b) of the GLB and of the applicable standards adopted pursuant thereto, as now or hereafter in effect. Upon request, each party will provide evidence reasonably satisfactory to allow the other party to confirm that the providing party has satisfied its obligations as required under this Section. Without limitation, this may include review of audits, summaries of test results, and other equivalent evaluations of the providing party.

**8.2 Warranties of Organization and Authority.**

Each party to this Agreement warrants and represents that: (i) it is duly incorporated or organized, validly existing, and in good standing under the laws of its state of incorporation or organization and/or under the laws of the United States and has the requisite power and authority to carry on its business and operations as now being conducted; (ii) it has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated by this Agreement; and that (iii) the execution and delivery of this Agreement, and the consummation of the transactions contemplated hereby, have been duly and validly authorized by all necessary corporate officers, board members, or other governing body or persons of each party.

**8.3 Partial-Exclusive Arrangement**

Company agrees to promote NYMC as one of no more than three preferred mortgage lenders. Except for the preceding sentence, the parties acknowledge that this Agreement is a partial exclusive arrangement and that each is free to pursue other marketing relationships with third parties. The parties expressly acknowledge and agree that the Customer is entitled to make the determination as to who the lender will be. While Company will promote NYMC as the lender of choice, Company shall not refuse to deal with a Customer nor may Company raise its charges, commissions or fees of any kind as a result of a Customer electing to use a lender other than NYMC.

**8.4 Press Releases**

Neither party shall issue a press release or make any public announcement related to this Agreement without the prior written approval of the other party.

**8.5 Agreement to Arbitrate Claims**

Upon written request by either party that is submitted according to the applicable rules for arbitration, any claim, demand or cause of action, which arises out of or is related to this Agreement (collectively "Claims"), shall be resolved by binding arbitration in the County of New York, New York in accordance with (i) the Federal Arbitration Act; (ii) the Code of Procedure ("Code") of the National Arbitration Forum and (iii) this Agreement, which shall control any inconsistency between it and the Code. The decision of an arbitrator on any Claims submitted to arbitration shall follow applicable substantive law and be in writing setting forth the findings of fact and law and the reasons supporting the decision. Such decision shall be final and binding upon the parties. Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement, including the provisions of this section. After a demand for arbitration is made, each party may conduct a limited number of depositions (including the production of documents) by mutual agreement or as permitted by the arbitrator.

**8.6 Limitation of Liability.**

EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, NEITHER PARTY WILL BE LIABLE UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY FOR ANY INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING WITHOUT LIMITATION LOST PROFITS OR LOSS OF BUSINESS OPPORTUNITY) WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT. EXCEPT FOR A PARTY'S INDEMNIFICATION OBLIGATIONS UNDER THIS AGREEMENT AND EXCLUDING PAYMENT OBLIGATIONS, NEITHER PARTY SHALL BE LIABLE UNDER THIS AGREEMENT FOR ANY AMOUNTS AGGREGATING IN EXCESS OF AMOUNTS PAID HEREUNDER IN THE TWELVE (12) MONTH PERIOD BEFORE THE CAUSE OF ACTION AROSE.

**8.7 Notices**
Any notice required hereunder may be given by personal delivery, by facsimile with confirmation of receipt, by overnight courier with confirmation of receipt, or by mail. Notice will be effective upon receipt unless sent by mail in which it will be effective three (3) business days after mailing. Notice shall be sent to:

Company:           _____
Contact:           _____
Title:             _____
Address:           _____
City, State, ZIP   _____
Phone:             _____
Fax:               _____

AND

The New York Mortgage Company, LLC
Steven B. Schnall, President/CEO
1301 Avenue of the Americas, 7th Floor
New York, NY  10019
Phone: (212) 634-9449
Fax: (212) 634-9420

**8.8 Assignment**
Neither party may assign, transfer or otherwise convey its obligations under this Agreement to any other party without the prior written consent of the other party.

**8.9 Independent Contractors**
The parties to this Agreement are independent contractors and no agency, partnership, joint venture or employee-employer relationship is intended or created by this Agreement.

**8.10 No Third Party Beneficiaries**
Nothing in this Agreement is intended to confer any right, remedy, obligation or liability upon any person or entity other than the parties hereto and their respective successors and permitted assigns.

**8.11 Further Acts**
The parties agree that each shall, at its own expense (unless otherwise herein provided), at any time and from time to time after the date hereof, upon the other's request, do, execute, acknowledge and deliver all such further acts, assignments, transfers, conveyances and assurances as may be required or reasonably advisable for the transactions provided for or contemplated by this Agreement.

**8.12 Governing Law**
This Agreement shall be deemed to have been made in and shall be construed under the laws of the State of New York and the United States, without regard to conflicts of law provisions.

**8.13 Attorneys' Fees**
If any claim, legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement or because of a dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that claim, action or proceeding, in addition to any other relief to which such party may be entitled.

**8.14 Severability**
If any term, clause or provision of this Agreement shall be deemed invalid or unenforceable for any reason, the remainder of this Agreement shall remain valid and enforceable in accordance with its terms.

### 8.15 Entire Agreement & Amendments
This Agreement constitutes the entire agreement between the parties relating to this subject matter, and all prior negotiations and understandings, whether oral or written are superseded. No modification or amendment of this Agreement shall be effective unless in writing and signed by the parties.

### 8.16 Headings
The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

### 8.17 Compliance with Applicable Law
Each party acknowledges and agrees that the other party has not provided any legal advice with respect to licenses that are required to be held by Company to conduct its business or to receive payments hereunder. Each party represents to and covenants that it has and will maintain at all times all necessary licenses to comply with applicable law.

### 8.18 Reciprocal Confidentiality
All Confidential Information shared by the disclosing party (the "Disclosing Party") with the receiving party or any of the receiving party's agents and employees (the "Recipient") shall be treated by the Recipient, as confidential and shall be maintained by the Recipient in confidence and shall not be disclosed in any form without Disclosing Party's prior written consent. "Confidential Information" shall mean any oral or written information or material that is proprietary to a party or designated as Confidential Information by a party and not generally known. Each of the parties understands that money damages would not be a sufficient remedy for any breach or threatened breach of this Section by the Recipient and that the Disclosing Party shall be entitled to, among any other remedies, specific performance and injunctive relief without proof of actual damages.

### 8.19 No Waiver
No failure on the part of any party to exercise or delay in exercising any right, power or remedy will preclude the exercise of any other right, power or remedy. No express assent or waiver by any party to any breach of any term of this Agreement shall constitute an assent to or waiver of any succeeding breach in the same or any other term.

### 8.20 Counterparts
This Agreement may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same Agreement.

### 8.21 Survival
Sections 6.3, 7, 8.1, 8.4, 8.5, 8.6, 8.7 and 8.18 shall survive the termination of this Agreement.

**IN WITNESS WHEREOF**, the parties have fully executed this Agreement as provided below.

_____        **THE NEW YORK MORTGAGE COMPANY, LLC**

_____        _____

By: _____        By: Steven B. Schnall

Title:         Title: President / CEO

Date: _____        Date: _____

*Exhibit A*

*Builder Marketing Options Checklist*

Marketing responsibilities for the period beginning [＿＿＿＿, 20＿] through [＿＿＿＿, 20＿].

**Company Information:**

| Full Legal/ Corporate Name: | | Contact Name: Title: | |
|---|---|---|---|
| Address: | | Phone: | |
| City, State and ZIP Code | | Fax: | |
| Website: | | E-mail: | |

Company will use commercially reasonable efforts, in compliance with all applicable laws and regulations, to promote the availability of NYMC loan products by performing or providing, at a minimum, four of the seven services in the first category and two of the four services in the second category on an ongoing basis (collectively, "Marketing Responsibilities").

**The first category of Marketing Responsibilities is as follows (Choose Four):**

☐ **1.** Displaying prominent NYMC signage inside or outside homes for sale (e.g. "Loans Available From NYMC" yard signs in front of selected listed homes);

                 Choose a minimum of one of the following:

    Inside: ☐ **a.** Preferred Lender Flyer Stand and Slick

             ☐ **b.** Lender Flyer Stand and Slick

    Outside: ☐**c.** Yard Sign: "Home Loans Available through NYMC"

          ☐**d.** Yard Sign: "Construction Financing by NYMC"

☐ **2.** Displaying advertising on the Company web site (such as banners, text, and graphics with hypertext links from the web site for click-through access to NYMC.com or realtors.NYMC.com); **NOTE:** *It is your responsibility to contact your NYMC representative for specific NYMC requirements and assistance.*

☐ **3.** Conducting mailing campaigns featuring NYMC loan products to Customers who express interest in Purchasing a home (e.g., sign Open House sign-in sheets); **NOTE:** *It is your responsibility to contact your NYMC representative for specific NYMC requirements and assistance.*

☐ **4.** Conducting e-mail campaigns promoting NYMC to clients in Company's prospect database or on Company's prospect marketing lists; **NOTE:** *It is your responsibility to contact your NYMC representative for specific NYMC requirements and assistance.*

☐ **5.** Conducting co-branded newspaper, radio and/or billboard campaigns including the NYMC logo, tag line and telephone number; **NOTE:** *It is your responsibility to contact your NYMC representative for specific NYMC requirements and assistance.*

☐ **6.** Arranging for NYMC sales professionals to participate in special events (such as seminars for Customers or Open House events); **NOTE:** *It is your responsibility to contact your NYMC representative for specific NYMC requirements and assistance.*

☐ **7.** Allowing NYMC to post flyers directed to consumers in the sales offices or branches. **NOTE:** *It is your responsibility to contact your NYMC representative for specific NYMC requirements and assistance.*

*Exhibit A (continued)*

*Builder Marketing Options Checklist*

### The second category of Marketing Responsibilities is as follows (Choose Two):

☐ **8.** Arranging for NYMC sales representatives to present products and offering at sales meetings;

☐ **9.** Providing training regarding the advantages of NYMC's products and services to Company sales representatives; **NOTE**: *It is your responsibility to contact your NYMC representative for assistance.*

☐ **10.** During the term hereof, distribute NYMC flyers, brochures and other marketing materials by either:
  ☐ **10a.** Displaying marketing materials in prominent locations at Company's sites and/or having Company personnel hand out marketing materials to Customers at Company's sites; **or**
  ☐ **10b.** Allowing NYMC to place kiosks in prominent locations at Company's sites for the purpose of displaying the marketing materials at all times;

☐ **11.** Promoting NYMC products to employees through an intranet, company newsletter or other forms of internal communications. **NOTE**: *It is your responsibility to contact your NYMC representative for assistance.*

*Important: NYMC will require proof that the marketing services indicated above are being performed on a regular and consistent basis.*

**THE NEW YORK MORTGAGE COMPANY, LLC**

_____

By: _____          By: Steven B. Schnall
Title: _____          Title: President / CEO

Date: _____                   Date: _____

*Exhibit B*

*Builder Profile*

**(Below information will need to be updated on a periodic basis to validate levels of activity.)**

**Date:** _____

**COMPANY INFORMATION:**

| | | | |
|---|---|---|---|
| Full Legal Name | | Contact Name/Title | |
| Address | | Phone # | |
| City, State, ZIP | | Fax # | |
| Website | | Signatory Name/Title | |
| Contact E-mail | | Phone # | |
| List State(s) in which Company operates | | Fax # | |

**HISTORICAL SALES VOLUME:**

| Period | Homes Sold and Closed | |
|---|---|---|
| | # of Units | $ Volume |
| Year To Date: 20____ | | |
| Prior Year: 20____ | | |

**FORECASTED SALES:** For the period from (month, year) _____ , 20___ through (month, year) _____ , 20___ .

| Future Period | Sales Contracts (Homes Sold) | | Sales Closings (Homes Closed) | |
|---|---|---|---|---|
| | # of Units | $ Volume | # of Units | $ Volume |
| Total days (remainder of 1st Quarter & 2nd Quarter) | | | | |
| 90 days | | | | |
| 180 days | | | | |
| 360 days | | | | |

The parties to this agreement acknowledge that the forecasts are used to measure the value of the marketing services to be performed and are not a commitment or guarantee that such results will be achieved.

_____          **THE NEW YORK MORTGAGE COMPANY, LLC**

_____          _____

By: _____                By: Steven B. Schnall
Title: _____                Title: President / CEO

Date: _____                      Date: _____



**From:** The Kowalski's
**Sent:** 5/17/2007 8:49:16 AM
**To:** Craig Kowalski
**Subject:** Fw: Rate sheet and P+L

----- Original Message -----
From: Johnson, Scott H. <mailto:SJohnson@nymc.com>
To: craigkowalski@optonline.net ; mpalmiot@nycapp.rr.com
Sent: Tuesday, May 15, 2007 4:03 PM
Subject: Rate sheet and P+L

Guys,

Here are the Indymac and NYMC rate sheets for today.

I have also attached a P+L from our Astoria Branch.

Call me if you have any questions!!

Scott


Scott Johnson

Divisional President

RLG - East

The New York Mortgage Company

a division of Indymac Bank

Phone: 800-392-6167

Fax: 888-659-4348

sjohnson@nymc.com

www.nymc.com

_____

This message contains information which may be confidential and privileged.
Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @nymc.com, and delete the message.
Thank you.

Attachment: Ratesheetnymc5-15.xls

Attachment: ratesheetindymac5-15.xls

Attachment: Astoria.xls

Attachment: image001.gif

# Branch 201/47503 (Manhattan) Internal Rate Sheet

**NYMC**
**THE**
**NEW YORK**
**MORTGAGE**
**COMPANY**
A division of
Indymac Bank

## The New York Mortgage Company, a divi

**Date:       9-May-08**

Key:

| Page | Description | Intra-sheet L | | |
|------|-------------|------|------|------|
| Page 1 | Investor 10 (CitiMortgage) | Conf & Jmbo Fxd | Adj Conf | Adj Jumbo |
| Page 2 | Investor 12 (Wells Fargo) | Base pricing | Risk Adjusters | State Adjusters |
| Page 3 | Investor 33 (Countrywide) | Conf fxd & arms | Jumbo fxd & arms | Pay Option |
| Page 4 | Investor 03 (Chase) | Fxd Conf & Jumbo | Adjst. Conf & Jumbo | Fxd Risk hits |
| Page 5 | Investor 03 (Chase Helocs/ Fixed 2nds) | | | |
| Page 6 | Investor 11 (Aurora) | Mtge Maker | MM Risk Hits | MM 2nds |
| Page 7 | Investor 49 (CSFB) | Alt-a 1st | Risk Hits | Alt-a 2nds |
| Page 8 | Investor 05 (Thornburg) | | | |
| Page 9 | Investor 15 (Astoria Federal) | | | |
| Page 10 | FHA/ VA | | | |

ts

## ision of Indymac Bank

| inks | | Guidelines | Print |
|---|---|---|---|
| Conf & Jumbo Risk Adj | | Conforming    Jumbo | ○ Print Page 1 (CitiMortgage) |
| | | Conforming    Jumbo | ○ Print Page 2 (Wells Fargo) |
| Risk Hits | | Guidelines | ○ Print Page 3 (Countrywide) |
| Adjst Risk Hits | | Conforming   Jumbo       IO | ○ Print Page 4 (Chase) |
| | | Loans Full Doc   HELOC/Full Doc   Stated Income | ● Print Page 5 (Chase 2nds/Helo |
| Alt-a | Alt-a Risk hits | Guidelines   Alt-A          MortgageMaker | ○ Print Page 6 (Aurora) |
| | | Matrix | ○ Print Page 7 (CSFB) |
| | | Guidelines                 Matrix | ○ Print Page 8 (Thornburg) |
| | | Guidelines   ARMs        Co-op ARMs | ○ Print Page 9 (Astoria) |
| | | Guidelines | ○ Print Page 10 (FHA/VA) |

# The New York Mortgage Company. A Division of Indymac Bank.

Retail Rate Sheet     11:39 AM   5/15/2007

**Investor 10**    Sheet of 1.1 of 10

**Fixed Conforming and Jumbo**

### 30 Year Fixed Conforming

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | -3.625 | -3.625 | -3.625 | -3.500 |
| 7.625 | -3.625 | -3.625 | -3.500 | -3.375 |
| 7.500 | -3.500 | -3.375 | -3.250 | -3.250 |
| 7.375 | -3.250 | -3.250 | -3.125 | -3.125 |
| 7.250 | -3.125 | -3.125 | -3.000 | -3.000 |
| 7.125 | -2.875 | -2.875 | -2.750 | -2.750 |
| 7.000 | -2.250 | -2.250 | -2.125 | -2.125 |
| 6.875 | -3.000 | -2.000 | -2.000 | -1.875 |
| 6.750 | -2.000 | -2.000 | -2.000 | -1.875 |
| 6.625 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.500 | -1.500 | -1.375 | -1.375 | -1.250 |
| 6.375 | -1.000 | -1.000 | -0.875 | -0.875 |
| 6.250 | -0.625 | -0.625 | -0.625 | -0.125 |
| 6.125 | -0.250 | -0.250 | -0.125 | -0.125 |
| 6.000 | 0.250 | 0.250 | 0.250 | 0.375 |
| 5.875 | 0.750 | 0.750 | 0.875 | 0.875 |
| 5.750 | 1.125 | 1.250 | 1.250 | 1.375 |

### 30 Year Fixed Jumbo

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.875 | -2.875 | -3.000 | -2.750 | -2.750 |
| 7.750 | -2.875 | -2.875 | -2.750 | -2.625 |
| 7.625 | -2.875 | -2.875 | -2.750 | -2.625 |
| 7.500 | -2.750 | -2.750 | -2.625 | -2.500 |
| 7.375 | -2.625 | -2.625 | -2.500 | -2.375 |
| 7.250 | -2.375 | -2.375 | -2.250 | -2.250 |
| 7.125 | -2.250 | -2.250 | -2.125 | -2.000 |
| 7.000 | -1.875 | -1.875 | -1.750 | -1.625 |
| 6.875 | -1.625 | -1.625 | -1.500 | -1.375 |
| 6.750 | -1.625 | -1.625 | -1.500 | -1.375 |
| 6.625 | -1.375 | -1.375 | -1.250 | -1.250 |
| 6.500 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.375 | -0.750 | -0.750 | -0.625 | -0.500 |
| 6.250 | -0.375 | -0.375 | -0.250 | -0.125 |
| 6.125 | 0.250 | 0.375 | 0.375 | 0.500 |
| 6.000 | 0.875 | 1.000 | 1.000 | 1.125 |
| 5.875 | 1.500 | 1.625 | 1.625 | 1.750 |

### 20 Year Fixed Conforming

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | -3.635 | -3.625 | -3.625 | -3.500 |
| 7.625 | -3.625 | -3.625 | -3.625 | -3.500 |
| 7.500 | -3.500 | -3.500 | -3.375 | -3.250 |
| 7.375 | -3.375 | -3.375 | -3.250 | -3.250 |
| 7.250 | -3.375 | -3.375 | -3.250 | -3.125 |
| 7.125 | -3.125 | -3.125 | -3.000 | -2.875 |
| 7.000 | -2.500 | -2.500 | -2.375 | -2.250 |
| 6.875 | -2.250 | -2.250 | -2.125 | -2.000 |
| 6.750 | -2.250 | -2.250 | -2.125 | -2.000 |
| 6.625 | -2.000 | -2.000 | -1.875 | -1.750 |
| 6.500 | -1.625 | -1.625 | -1.500 | -1.500 |
| 6.375 | -1.250 | -1.125 | -1.125 | -1.000 |
| 6.250 | -0.875 | -0.875 | -0.750 | -0.750 |
| 6.125 | -0.500 | -0.500 | -0.375 | -0.375 |
| 6.000 | -0.125 | 0.000 | 0.000 | 0.000 |
| 5.875 | 0.375 | 0.375 | 0.500 | 0.500 |
| 5.750 | 0.750 | 0.875 | 0.875 | 1.000 |

### 20 Year Fixed Jumbo

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.875 | -3.125 | -3.250 | -3.000 | -3.000 |
| 7.750 | -3.125 | -3.125 | -3.000 | -2.875 |
| 7.625 | -3.125 | -3.125 | -3.000 | -2.875 |
| 7.500 | -3.000 | -3.000 | -2.875 | -2.750 |
| 7.375 | -2.875 | -2.875 | -2.750 | -2.625 |
| 7.250 | -2.625 | -2.625 | -2.500 | -2.500 |
| 7.125 | -2.500 | -2.500 | -2.375 | -2.250 |
| 7.000 | -2.125 | -2.125 | -2.000 | -1.875 |
| 6.875 | -1.875 | -1.875 | -1.750 | -1.625 |
| 6.750 | -1.875 | -1.875 | -1.750 | -1.500 |
| 6.625 | -1.625 | -1.625 | -1.500 | -1.500 |
| 6.500 | -1.375 | -1.375 | -1.250 | -1.125 |
| 6.375 | -1.000 | -1.000 | -0.875 | -0.750 |
| 6.250 | -0.625 | -0.500 | -0.500 | -0.375 |
| 6.125 | 0.000 | 0.125 | 0.125 | 0.250 |
| 6.000 | 0.625 | 0.750 | 0.750 | 0.875 |
| 5.875 | 1.250 | 1.375 | 1.375 | 1.500 |

### 15 Year Fixed Conforming

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.250 | -3.250 | -3.125 | -3.125 | -3.125 |
| 7.125 | -3.250 | -3.125 | -3.250 | -3.125 |
| 7.000 | -3.125 | -3.000 | -3.125 | -3.000 |
| 6.875 | -2.875 | -2.750 | -2.750 | -2.750 |
| 6.750 | -2.625 | -2.625 | -2.625 | -2.500 |
| 6.625 | -2.375 | -2.375 | -2.250 | -2.250 |
| 6.500 | -2.000 | -1.875 | -1.875 | -1.875 |
| 6.375 | -1.625 | -1.500 | -1.500 | -1.375 |
| 6.250 | -1.250 | -1.250 | -1.250 | -1.125 |
| 6.125 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.000 | -0.500 | -0.500 | -0.500 | -0.375 |
| 5.875 | -0.250 | -0.125 | -0.125 | 0.000 |
| 5.750 | 0.125 | 0.125 | 0.250 | 0.375 |
| 5.625 | 0.500 | 0.500 | 0.625 | 0.750 |
| 5.500 | 1.000 | 1.000 | 1.125 | 1.250 |
| 5.375 | 1.375 | 1.375 | 1.500 | 1.500 |

### 10 Year Fixed Conforming Interest Only

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | -2.875 | -2.875 | -2.750 | -2.750 |
| 7.625 | -2.875 | -2.750 | -2.750 | -2.625 |
| 7.500 | -2.625 | -2.500 | -2.500 | -2.375 |
| 7.375 | -2.750 | -2.750 | -2.625 | -2.500 |
| 7.250 | -2.500 | -2.500 | -2.375 | -2.250 |
| 7.125 | -2.250 | -2.250 | -2.250 | -2.125 |
| 7.000 | -1.750 | -1.625 | -1.625 | -1.500 |
| 6.875 | -1.500 | -1.500 | -1.375 | -1.250 |
| 6.750 | -1.500 | -1.500 | -1.375 | -1.250 |
| 6.625 | -1.250 | -1.250 | -1.125 | -1.125 |
| 6.500 | -0.875 | -0.875 | -0.375 | -0.250 |
| 6.375 | -0.500 | -0.375 | -0.375 | -0.250 |
| 6.250 | 0.900 | 0.000 | 0.000 | 0.125 |
| 6.125 | 0.375 | 0.375 | 0.500 | 0.625 |
| 6.000 | 0.875 | 0.875 | 1.000 | 1.000 |
| 5.875 | 1.375 | 1.500 | 1.500 | 1.625 |
| 5.750 | 2.000 | 2.000 | 2.125 | 2.125 |

### 15 Year Fixed Jumbo

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.375 | -1.500 | -1.375 | -1.375 | -1.250 |
| 7.250 | -1.500 | -1.375 | -1.375 | -1.375 |
| 7.125 | -1.500 | -1.375 | -1.375 | -1.375 |
| 7.000 | -1.500 | -1.375 | -1.375 | -1.375 |
| 6.875 | -1.500 | -1.375 | -1.375 | -1.250 |
| 6.750 | -1.500 | -1.375 | -1.375 | -1.250 |
| 6.625 | -1.375 | -1.375 | -1.375 | -1.250 |
| 6.500 | -1.375 | -1.250 | -1.250 | -1.125 |
| 6.375 | -1.125 | -1.125 | -1.125 | -1.000 |
| 6.250 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.125 | -0.750 | -0.625 | -0.625 | -0.500 |
| 6.000 | -0.375 | -0.375 | -0.250 | -0.250 |
| 5.875 | 0.000 | 0.000 | 0.125 | 0.125 |
| 5.750 | 0.375 | 0.500 | 0.500 | 0.625 |
| 5.625 | 1.000 | 1.125 | 1.125 | 1.250 |
| 5.500 | 1.625 | 1.750 | 1.750 | 1.875 |
| 5.375 | 2.250 | 2.375 | 2.375 | 2.500 |

### 10 Year Fixed Conforming

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.250 | -3.375 | -3.250 | -3.250 | -3.125 |
| 7.125 | -3.125 | -3.000 | -3.000 | -3.000 |
| 7.000 | -2.875 | -2.875 | -2.875 | -2.750 |
| 6.875 | -2.625 | -2.625 | -2.625 | -2.500 |
| 6.750 | -2.500 | -2.375 | -2.375 | -2.250 |
| 6.625 | -2.250 | -2.125 | -2.125 | -2.000 |
| 6.500 | -1.875 | -1.875 | -1.750 | -1.750 |
| 6.375 | -1.500 | -1.500 | -1.500 | -1.375 |
| 6.250 | -1.125 | -1.125 | -1.125 | -1.000 |
| 6.125 | -0.875 | -0.875 | -0.875 | -0.750 |
| 6.000 | -0.500 | -0.500 | -0.375 | -0.375 |
| 5.875 | -0.125 | 0.000 | 0.000 | 0.125 |
| 5.750 | 0.250 | 0.250 | 0.375 | 0.500 |
| 5.625 | 0.625 | 0.625 | 0.750 | 0.875 |
| 5.500 | 1.000 | 1.000 | 1.125 | 1.250 |
| 5.375 | 1.500 | 1.500 | 1.500 | 1.625 |

### 40 Year Fixed Conforming

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | -3.125 | -3.125 | -3.000 | -2.875 |
| 7.625 | -3.000 | -2.875 | -2.750 | -2.750 |
| 7.500 | -2.750 | -2.625 | -2.625 | -2.500 |
| 7.375 | -2.625 | -2.625 | -2.500 | -2.375 |
| 7.250 | -2.500 | -2.500 | -2.375 | -2.250 |
| 7.125 | -2.250 | -2.250 | -2.125 | -2.125 |
| 7.000 | -1.750 | -1.625 | -1.625 | -1.500 |
| 6.875 | -1.500 | -1.500 | -1.375 | -1.250 |
| 6.750 | -1.500 | -1.500 | -1.375 | -1.250 |
| 6.625 | -1.250 | -1.250 | -1.125 | -1.000 |
| 6.500 | -0.875 | -0.875 | -0.750 | -0.750 |
| 6.375 | -0.500 | -0.375 | -0.375 | -0.250 |
| 6.250 | 0.125 | 0.375 | 0.500 | 0.500 |
| 6.000 | 0.875 | 0.875 | 0.875 | 1.000 |
| 5.875 | 1.375 | 1.500 | 1.500 | 1.625 |
| 5.750 | 2.000 | 2.125 | 2.125 | 2.250 |

### 10 Year Fixed Jumbo

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.375 | -1.750 | -1.625 | -1.625 | -1.500 |
| 7.250 | -1.750 | -1.625 | -1.625 | -1.625 |
| 7.125 | -1.750 | -1.625 | -1.625 | -1.625 |
| 7.000 | -1.750 | -1.625 | -1.625 | -1.625 |
| 6.875 | -1.750 | -1.625 | -1.625 | -1.500 |
| 6.750 | -1.750 | -1.625 | -1.625 | -1.500 |
| 6.625 | -1.625 | -1.625 | -1.500 | -1.500 |
| 6.500 | -1.625 | -1.500 | -1.500 | -1.375 |
| 6.375 | -1.375 | -1.375 | -1.375 | -1.250 |
| 6.250 | -1.250 | -1.125 | -1.125 | -1.000 |
| 6.125 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.000 | -0.625 | -0.625 | -0.500 | -0.500 |
| 5.875 | -0.250 | -0.250 | -0.125 | -0.125 |
| 5.750 | 0.125 | 0.250 | 0.250 | 0.375 |
| 5.625 | 0.750 | 0.875 | 0.875 | 1.000 |
| 5.500 | 1.375 | 1.500 | 1.500 | 1.625 |
| 5.375 | 2.000 | 2.125 | 2.125 | 2.250 |

# The New York Mortgage Company. A Division of Indymac Bank.

5/15/2007

Retail Rate Sheet

## Investor 10

Sheet of 1.2 of 10

### Adjustable Conforming

**1 Year Treasury Arm**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**1 Year Libor Arm**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**6 Month Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**3/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.875 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.750 | -1.750 | -1.750 | -1.625 | -1.625 |
| 6.625 | -1.500 | -1.500 | -1.500 | -1.375 |
| 6.500 | -1.375 | -1.375 | -1.250 | -1.250 |
| 6.375 | -1.250 | -1.250 | -1.125 | -1.000 |
| 6.250 | -1.125 | -1.000 | -1.000 | -0.875 |
| 6.125 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.000 | -0.625 | -0.625 | -0.625 | -0.500 |
| 5.875 | -0.500 | -0.500 | -0.375 | -0.375 |
| 5.750 | -0.250 | -0.250 | -0.250 | -0.125 |
| 5.625 | -0.125 | 0.000 | 0.000 | 0.125 |
| 5.500 | 0.125 | 0.125 | 0.125 | 0.250 |
| 5.375 | 0.375 | 0.375 | 0.375 | 0.500 |
| 5.250 | 0.500 | 0.500 | 0.625 | 0.625 |
| 5.125 | 0.750 | 0.750 | 0.875 | 0.875 |

**3/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.750 | -1.625 | -1.750 | -1.500 |
| 6.500 | -1.500 | -1.500 | -1.500 | -1.375 |
| 6.375 | -1.375 | -1.375 | -1.250 | -1.250 |
| 6.250 | -1.250 | -1.125 | -1.125 | -1.000 |
| 6.125 | -1.000 | -0.875 | -0.875 | -0.875 |
| 6.000 | -0.875 | -0.750 | -0.750 | -0.625 |
| 5.875 | -0.625 | -0.625 | -0.625 | -0.500 |
| 5.750 | -0.375 | -0.375 | -0.375 | -0.250 |
| 5.625 | -0.250 | -0.250 | -0.125 | -0.125 |
| 5.500 | 0.000 | 0.000 | 0.000 | 0.125 |
| 5.375 | 0.125 | 0.250 | 0.250 | 0.375 |
| 5.250 | 0.375 | 0.375 | 0.500 | 0.500 |
| 5.125 | 0.625 | 0.625 | 0.625 | 0.750 |
| 5.000 | 0.875 | 0.875 | 1.000 | 1.000 |

**Agency Interest Only 3/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.625 | -1.625 | -1.625 | -1.500 |
| 6.500 | -1.500 | -1.500 | -1.500 | -1.375 |
| 6.375 | -1.375 | -1.250 | -1.250 | -1.125 |
| 6.250 | -1.125 | -1.125 | -1.125 | -1.000 |
| 6.125 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.000 | -0.750 | -0.750 | -0.750 | -0.625 |
| 5.875 | -0.625 | -0.500 | -0.500 | -0.375 |
| 5.750 | -0.375 | -0.375 | -0.375 | -0.250 |
| 5.625 | -0.250 | -0.125 | -0.125 | 0.000 |
| 5.500 | 0.000 | 0.000 | 0.125 | 0.250 |
| 5.375 | 0.250 | 0.250 | 0.250 | 0.375 |
| 5.250 | 0.500 | 0.500 | 0.500 | 0.625 |
| 5.125 | 0.750 | 0.750 | 0.750 | 0.875 |
| 5.000 | 1.000 | 1.000 | 1.000 | 1.125 |

**5/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.625 | -1.500 | -1.500 | -1.375 |
| 6.500 | -1.375 | -1.250 | -1.250 | -1.125 |
| 6.375 | -1.250 | -1.250 | -1.250 | -1.125 |
| 6.250 | -1.000 | -1.000 | -1.000 | -0.875 |
| 6.125 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.000 | -0.625 | -0.500 | -0.500 | -0.500 |
| 5.875 | -0.250 | -0.250 | -0.250 | -0.125 |
| 5.750 | 0.000 | 0.000 | 0.000 | 0.125 |
| 5.625 | 0.125 | 0.250 | 0.250 | 0.375 |
| 5.500 | 0.500 | 0.500 | 0.500 | 0.625 |
| 5.375 | 0.875 | 0.875 | 0.875 | 1.000 |
| 5.250 | 1.125 | 1.125 | 1.250 | 1.375 |
| 5.125 | 1.500 | 1.500 | 1.500 | 1.625 |
| 5.000 | 1.875 | 1.875 | 1.875 | 2.000 |

**5/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.625 | -1.625 | -1.625 | -1.500 |
| 6.500 | -1.500 | -1.375 | -1.375 | -1.375 |
| 6.375 | -1.375 | -1.375 | -1.375 | -1.250 |
| 6.250 | -1.125 | -1.125 | -1.125 | -1.000 |
| 6.125 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.000 | -0.750 | -0.625 | -0.625 | -0.500 |
| 5.875 | -0.375 | -0.375 | -0.375 | -0.250 |
| 5.750 | -0.125 | -0.125 | -0.125 | 0.000 |
| 5.625 | 0.125 | 0.125 | 0.125 | 0.250 |
| 5.500 | 0.500 | 0.500 | 0.500 | 0.625 |
| 5.375 | 0.750 | 0.875 | 0.875 | 1.000 |
| 5.250 | 1.000 | 1.000 | 1.125 | 1.250 |
| 5.125 | 1.375 | 1.375 | 1.375 | 1.500 |
| 5.000 | 1.750 | 1.750 | 1.750 | 1.875 |

**Agency Interest Only 5/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.750 | -1.625 | -1.625 | -1.500 |
| 6.500 | -1.500 | -1.375 | -1.375 | -1.250 |
| 6.375 | -1.375 | -1.375 | -1.375 | -1.250 |
| 6.250 | -1.250 | -1.125 | -1.125 | -1.000 |
| 6.125 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.000 | -0.750 | -0.625 | -0.625 | -0.500 |
| 5.875 | -0.375 | -0.375 | -0.375 | -0.250 |
| 5.750 | -0.125 | -0.125 | -0.125 | 0.000 |
| 5.625 | 0.125 | 0.125 | 0.125 | 0.250 |
| 5.500 | 0.500 | 0.500 | 0.500 | 0.625 |
| 5.375 | 0.875 | 0.875 | 0.875 | 1.000 |
| 5.250 | 1.125 | 1.125 | 1.125 | 1.250 |
| 5.125 | 1.375 | 1.500 | 1.500 | 1.625 |
| 5.000 | 1.875 | 1.875 | 1.875 | 2.000 |

**7/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.625 | -1.625 | -1.625 | -1.500 |
| 6.500 | -1.375 | -1.375 | -1.250 | -1.250 |
| 6.375 | -1.125 | -1.125 | -1.125 | -1.000 |
| 6.250 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.125 | -0.750 | -0.625 | -0.625 | -0.500 |
| 6.000 | -0.375 | -0.375 | -0.375 | -0.250 |
| 5.875 | 0.000 | 0.000 | 0.000 | 0.125 |
| 5.750 | 0.250 | 0.375 | 0.375 | 0.500 |
| 5.625 | 0.625 | 0.625 | 0.625 | 0.750 |
| 5.500 | 1.000 | 1.000 | 1.000 | 1.125 |
| 5.375 | 1.375 | 1.500 | 1.500 | 1.625 |
| 5.250 | 1.750 | 1.750 | 1.875 | 1.875 |
| 5.125 | 2.125 | 2.125 | 2.250 | 2.375 |
| 5.000 | 2.500 | 2.500 | 2.625 | 2.750 |

**7/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.625 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.500 | -1.625 | -1.625 | -1.375 | -1.250 |
| 6.375 | -1.500 | -1.375 | -1.375 | -1.250 |
| 6.250 | -1.250 | -1.250 | -1.115 | -1.125 |
| 6.125 | -1.000 | -1.000 | -1.000 | -0.875 |
| 6.000 | -0.750 | -0.625 | -0.625 | -0.500 |
| 5.875 | -0.375 | -0.250 | -0.250 | -0.125 |
| 5.750 | 0.000 | 0.000 | 0.000 | 0.125 |
| 5.625 | 0.375 | 0.375 | 0.375 | 0.500 |
| 5.500 | 0.625 | 0.625 | 0.750 | 0.875 |
| 5.375 | 1.155 | 1.125 | 1.250 | 1.250 |
| 5.250 | 1.500 | 1.500 | 1.500 | 1.625 |
| 5.125 | 1.875 | 1.875 | 1.875 | 2.000 |
| 5.000 | 2.250 | 2.250 | 2.375 | 2.375 |

**Agency Interest Only 7/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.625 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.500 | -1.625 | -1.750 | -1.750 | -1.625 |
| 6.375 | -1.250 | -1.250 | -1.375 | -1.250 |
| 6.250 | -1.250 | -1.250 | -1.115 | -1.125 |
| 6.125 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.000 | -0.500 | -0.375 | -0.375 | -0.250 |
| 5.875 | 0.000 | 0.000 | 0.000 | 0.125 |
| 5.750 | 0.250 | 0.250 | 0.250 | 0.375 |
| 5.625 | 0.625 | 0.625 | 0.625 | 0.750 |
| 5.500 | 1.000 | 1.000 | 1.000 | 1.125 |
| 5.375 | 1.500 | 1.500 | 1.500 | 1.625 |
| 5.250 | 1.750 | 1.875 | 1.875 | 2.000 |
| 5.125 | 2.250 | 2.250 | 2.250 | 2.375 |
| 5.000 | 2.625 | 2.625 | 2.750 | 2.875 |

**10/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.750 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.625 | -1.625 | -1.625 | -1.500 | -1.500 |
| 6.500 | -1.250 | -1.250 | -1.250 | -1.125 |
| 6.375 | -1.000 | -1.000 | -1.000 | -0.875 |
| 6.250 | -0.750 | -0.750 | -0.625 | -0.625 |
| 6.125 | -0.500 | -0.375 | -0.375 | -0.250 |
| 6.000 | -0.125 | -0.125 | 0.000 | 0.000 |
| 5.875 | 0.375 | 0.375 | 0.375 | 0.500 |
| 5.750 | 0.750 | 0.750 | 0.875 | 0.875 |
| 5.625 | 1.125 | 1.125 | 1.125 | 1.250 |
| 5.500 | 1.500 | 1.500 | 1.625 | 1.750 |
| 5.375 | 1.900 | 2.000 | 2.125 | 2.125 |
| 5.250 | 2.375 | 2.500 | 2.500 | 2.625 |
| 5.125 | 2.875 | 2.875 | 2.875 | 3.000 |
| 5.000 | 3.375 | 3.375 | 3.375 | 3.500 |

**10/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.500 | -1.375 | -1.375 | -1.375 | -1.250 |
| 6.375 | -1.250 | -1.125 | -1.125 | -1.000 |
| 6.250 | -0.875 | -0.875 | -0.875 | -0.750 |
| 6.125 | -0.625 | -0.500 | -0.500 | -0.500 |
| 6.000 | -0.250 | -0.250 | -0.125 | -0.125 |
| 5.875 | 0.250 | 0.250 | 0.250 | 0.375 |
| 5.750 | 0.625 | 0.625 | 0.625 | 0.750 |
| 5.625 | 1.000 | 1.000 | 1.000 | 1.125 |
| 5.500 | 1.375 | 1.375 | 1.500 | 1.625 |
| 5.375 | 1.875 | 1.875 | 2.000 | 2.000 |
| 5.250 | 2.250 | 2.375 | 2.375 | 2.375 |
| 5.125 | 2.750 | 2.750 |  | 3.375 |

**Agency Interest Only 10/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 6.625 | -1.750 | -1.750 | -1.750 | -1.625 |
| 6.500 | -1.750 | -1.625 | -1.625 | -1.500 |
| 6.375 | -1.500 | -1.375 | -1.375 | -1.250 |
| 6.250 | -1.125 | -1.125 | -1.115 | -1.000 |
| 6.125 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.000 | -0.500 | -0.375 | -0.375 | -0.250 |
| 5.875 | 0.000 | 0.125 | 0.125 | 0.250 |
| 5.750 | 0.500 | 0.500 | 0.500 | 0.625 |
| 5.625 | 0.875 | 0.875 | 0.875 | 1.000 |
| 5.500 | 1.250 | 1.375 | 1.375 | 1.500 |
| 5.375 | 1.750 | 1.875 | 1.875 | 2.000 |
| 5.250 | 2.250 | 2.250 | 2.250 | 2.375 |
| 5.125 | 2.750 | 2.750 | 2.750 | 2.875 |
| 5.000 | 3.250 | 3.250 | 3.250 | 3.375 |

2

# The New York Mortgage Company. A Division of Indymac Bank.

Retail Rate Sheet

5/15/2007

## Investor 10

Sheet of 1.3 of 10

### Adjustable Jumbo

**1 Month I/O Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**1 Year Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**1 Year Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**6 Month Libor I/O**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**3/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 8.000 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.875 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.750 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.625 | -1.875 | -1.750 | -1.625 | -1.500 |
| 7.500 | -1.750 | -1.625 | -1.500 | -1.500 |
| 7.375 | -1.750 | -1.625 | -1.500 | -1.375 |
| 7.250 | -1.625 | -1.500 | -1.375 | -1.250 |
| 7.125 | -1.500 | -1.375 | -1.250 | -1.250 |
| 7.000 | -1.375 | -1.250 | -1.125 | -1.000 |
| 6.875 | -1.250 | -1.125 | -1.000 | -1.000 |
| 6.750 | -1.250 | -1.125 | -1.000 | -1.000 |
| 6.625 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.500 | -1.000 | -1.000 | -0.875 | -0.750 |
| 6.375 | -1.000 | -0.875 | -0.750 | -0.750 |
| 6.250 | -0.875 | -0.750 | -0.750 | -0.625 |

**3/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.875 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.750 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.625 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.500 | -1.875 | -1.750 | -1.625 | -1.500 |
| 7.375 | -1.750 | -1.625 | -1.500 | -1.375 |
| 7.250 | -1.625 | -1.500 | -1.500 | -1.375 |
| 7.125 | -1.625 | -1.500 | -1.375 | -1.250 |
| 7.000 | -1.375 | -1.375 | -1.250 | -1.125 |
| 6.875 | -1.375 | -1.250 | -1.125 | -1.000 |
| 6.750 | -1.375 | -1.250 | -1.125 | -1.000 |
| 6.625 | -1.250 | -1.125 | -1.125 | -1.006 |
| 6.500 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.375 | -1.000 | -1.000 | -0.875 | -0.750 |
| 6.250 | -1.000 | -0.875 | -0.875 | -0.750 |
| 6.125 | -0.875 | -0.750 | -0.750 | -0.625 |

**6 Month Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|

**5/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.875 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.750 | -1.875 | -1.875 | -1.750 | -1.750 |
| 7.625 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.500 | -1.875 | -1.750 | -1.625 | -1.625 |
| 7.375 | -1.875 | -1.750 | -1.625 | -1.500 |
| 7.250 | -1.750 | -1.625 | -1.500 | -1.375 |
| 7.125 | -1.625 | -1.500 | -1.375 | -1.375 |
| 7.000 | -1.500 | -1.375 | -1.250 | -1.125 |
| 6.875 | -1.375 | -1.250 | -1.125 | -1.125 |
| 6.750 | -1.375 | -1.250 | -1.125 | -1.125 |
| 6.625 | -1.250 | -1.125 | -1.000 | -1.000 |
| 6.500 | -1.125 | -1.000 | -0.875 | -0.875 |
| 6.375 | -1.125 | -0.875 | -0.750 | -0.750 |
| 6.250 | -0.750 | -0.750 | -0.625 | -0.500 |

**5/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.500 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.375 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.250 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.125 | -1.875 | -1.750 | -1.625 | -1.500 |
| 7.000 | -1.625 | -1.500 | -1.500 | -1.375 |
| 6.875 | -1.500 | -1.500 | -1.375 | -1.250 |
| 6.750 | -1.500 | -1.500 | -1.375 | -1.250 |
| 6.625 | -1.500 | -1.375 | -1.250 | -1.125 |
| 6.500 | -1.250 | -1.250 | -1.125 | -1.000 |
| 6.375 | -1.125 | -1.125 | -1.000 | -0.873 |
| 6.125 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.000 | -0.750 | -0.750 | -0.625 | -0.500 |
| 5.875 | -0.500 | -0.500 | -0.500 | -0.375 |

**Interest Only Products:**

The following Non-Agency ARMs are available with an Interest Only option.

Adjust NC ARM pricing by .125

| Product | Libor Index | Treas Index |
|---|---|---|
| 1 month I/O | X | N/A |
| 6 month I/O | X | N/A |
| 1 year I/O | X | N/A |
| 3/1 I/O | X | X |
| 5/1 I/O | X | X |
| 7/1 I/O | X | X |
| 10/1 I/O | X | X |

**7/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.500 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.375 | -1.750 | -1.625 | -1.500 | -1.375 |
| 7.250 | -1.625 | -1.500 | -1.375 | -1.250 |
| 7.125 | -1.500 | -1.375 | -1.250 | -1.125 |
| 7.000 | -1.125 | -1.125 | -1.000 | -0.876 |
| 6.875 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.750 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.625 | -1.000 | -0.975 | -0.875 | -0.750 |
| 6.500 | -0.750 | -0.750 | -0.625 | -0.500 |
| 6.375 | -0.625 | -0.500 | -0.500 | -0.375 |
| 6.250 | -0.375 | -0.375 | -0.250 | -0.125 |
| 6.125 | -0.125 | -0.125 | 0.000 | 0.125 |
| 6.000 | 0.125 | 0.125 | 0.250 | 0.375 |
| 5.875 | 0.375 | 0.500 | 0.500 | 0.625 |
| 5.750 | 0.750 | 0.875 | 0.875 | 1.006 |

**7/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.500 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.375 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.250 | -1.875 | -1.750 | -1.625 | -1.500 |
| 7.125 | -1.750 | -1.625 | -1.500 | -1.375 |
| 7.000 | -1.500 | -1.375 | -1.250 | -1.125 |
| 6.875 | -1.375 | -1.375 | -1.250 | -1.125 |
| 6.750 | -1.500 | -1.375 | -1.250 | -1.125 |
| 6.625 | -1.250 | -1.125 | -1.125 | -1.000 |
| 6.500 | -1.125 | -1.000 | -0.875 | -0.875 |
| 6.375 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.250 | -0.625 | -0.625 | -0.500 | -0.375 |
| 6.125 | -0.375 | -0.375 | -0.250 | -0.250 |
| 6.000 | -0.125 | -0.125 | 0.000 | 0.000 |
| 5.875 | 0.125 | 0.125 | 0.250 | 0.375 |
| 5.750 | 0.500 | 0.500 | 0.625 | 0.625 |

**10/1 Treasury**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.625 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.500 | -1.875 | -1.875 | -1.750 | -1.500 |
| 7.375 | -1.750 | -1.625 | -1.500 | -1.375 |
| 7.250 | -1.625 | -1.500 | -1.375 | -1.250 |
| 7.125 | -1.375 | -1.375 | -1.250 | -1.125 |
| 7.000 | -1.375 | -1.250 | -1.125 | -1.125 |
| 6.875 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.750 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.625 | -1.000 | -0.875 | -0.750 | -0.750 |
| 6.500 | -0.750 | -0.625 | -0.625 | -0.500 |
| 6.375 | -0.625 | -0.500 | -0.500 | -0.375 |
| 6.250 | -0.375 | -0.375 | -0.250 | -0.125 |
| 6.125 | -0.125 | 0.000 | 0.000 | 0.125 |
| 6.000 | 0.125 | 0.250 | 0.250 | 0.375 |

**10/1 Libor**

| Note Rate | 15-Day Best Efforts | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.500 | -1.875 | -1.875 | -1.875 | -1.750 |
| 7.375 | -1.875 | -1.875 | -1.750 | -1.625 |
| 7.250 | -1.750 | -1.625 | -1.615 | -1.500 |
| 7.125 | -1.625 | -1.500 | -1.500 | -1.375 |
| 7.000 | -1.500 | -1.375 | -1.375 | -1.125 |
| 6.875 | -1.375 | -1.250 | -1.250 | -1.125 |
| 6.750 | -1.375 | -1.250 | -1.125 | -1.125 |
| 6.625 | -1.125 | -1.125 | -1.000 | -0.875 |
| 6.500 | -1.000 | -0.875 | -0.750 | -0.625 |
| 6.375 | -0.875 | -0.750 | -0.750 | -0.625 |
| 6.125 | -0.250 | -0.250 | -0.125 | -0.125 |
| 6.000 | -0.125 | 0.000 | 0.125 | 0.125 |
| 5.875 | 0.250 | 0.375 | 0.375 | 0.500 |
| 5.750 | 0.625 | 0.625 | 0.750 | 0.875 |

# The New York Mortgage Company. A Division of Indymac Bank.

Retail Rate Sheet

5/15/2007

**Investor 10**    Sheet of 14 of 10.

Conforming and Jumbo-Risk Adjusters (Fixed & Adjustable)

## AGENCY CONVENTIONAL PRICE and RATE ADJUSTERS

| Loan Feature | | Fixed A-4Y. | Arm A-4Y. |
|---|---|---|---|
| Non-Escrowed Loans | | 0.250 | 0.250 |
| 40 Year Term | | 0.000 | 0.375 |
| Subordinate Fin or Full Amortization or Fixed I/O | 70% LTV & 90.01-95% CLTV | 0.250 | 0.250 |
| Agency Interest Only - Subsequent Financing | >75% LTV & >75 % CLTV | 0.250 | 0.250 |
| Agency Interest Only - Fixed Rate | 70% LTV | 0.250 | n/a |
| Purchase or Rate/Term Refi | 70% LTV | 0.000 | 0.250 |
| Cash-Out Refinance | 70.01-80% LTV | 0.500 | 0.500 |
| Cash-Out Refinance | 70% LTV | 0.250 | 0.750 |
| 2-Unit | 70% LTV | 0.500 | 0.500 |
| COOP Owner Occupied | 70% LTV | 0.750 | 0.500 |
| COOP 2nd Home | 70% LTV | 0.750 | 0.750 |
| Investment Properties-Conf. 30/30/40 yr. FIX & ARM | LTV <= 75%, FICO <=679 | 0.750 | 0.750 |
| Investment Properties-Conf. 30/30/40 yr. FIX & ARM | LTV <= 75%, FICO >680-719 | 0.625 | 0.625 |
| Investment Properties-Conf. 30/30/40 yr. FIX & ARM | LTV <= 75%, FICO >=720 | 0.000 | 0.500 |
| Investment Properties-Conf. 30/30/40 yr. FIX & ARM | LTV > 75%, FICO <=679 | 1.750 | 1.750 |
| Investment Properties-Conf. 30/30/40 yr. FIX & ARM | LTV > 75%, FICO >680-719 | 1.625 | 1.625 |
| Investment Properties-Conf. 30/30/40 yr. FIX & ARM | LTV > 75%, FICO >=720 | 1.500 | 1.500 |
| Investment Properties-Conf. 10/15 yr. FIX | LTV <= 75%, FICO <=679 | 0.250 | n/a |
| Investment Properties-Conf. 10/15 yr. FIX | LTV <= 75%, FICO >680-719 | 0.125 | n/a |
| Investment Properties-Conf. 10/15 yr. FIX | LTV <= 75%, FICO >=720 | 0.000 | n/a |
| Investment Properties-Conf. 10/15 yr. FIX | LTV > 75%, FICO <=679 | 2.250 | n/a |
| Investment Properties-Conf. 10/15 yr. FIX | LTV > 75%, FICO >680-719 | 1.125 | n/a |
| Investment Properties-Conf. 10/15 yr. FIX | LTV > 75%, FICO >=720 | 1.000 | n/a |
| Asset Based Fixed Adjusters | Use Non-Agency Pricing and Adjusters | 0.000 | 0.000 |
| ALT P - 10% MI Coverage | | 0.500 | 0.500 |
| ALT P5- 15% MI Coverage | | 1.750 | 1.750 |
| FHMA 97.5 yr DU Decision(20% MI) | 97.01-97% LTV | 1.250 | n/a |
| Subordinate Financing 7925 | <=70% LTV & >95% CLTV, FICO >=680 | 0.250 | 0.250 |
| Subordinate Financing 7925 | <=70% LTV & >95% CLTV, FICO <680 | 1.000 | 1.000 |
| Flex 100-DU Approve/Refer(20% MI) | 97.01%-100% LTV & FICO >=680 | 0.500 | 0.500 |
| Flex 100-DU Approve/Refer(20% MI) | 97.01%-100% LTV & FICO < 680 | 1.000 | 1.000 |
| Flex 100-DU Approve/Refer(20% MI) | 97.01%-100% LTV | 2.000 | 2.500 |
| FLEX 97/100 w/sub financing | CLTV > 95% & FICO >=680 | 1.000 | 1.000 |
| FLEX 97/100 w/sub financing | CLTV > 95% & FICO > 680 | 1.500 | 1.500 |
| Flex97-DU Approve/Refer(20% MI) | 90%-97% >95% CLTV | 1.500 | 1.500 |
| Flex97-DU Approve/Refer(20% MI) | 90%-97% no sub financing | 1.750 | 1.250 |
| Flex97-DU Approve/Refer(20% MI) | 90% 97% LTV | 0.500 | 0.500 |
| Freddie Mac A- | Level 1 | Add 375 to Rate | n/a |
| Freddie Mac A- | Level 2 | Add .500 to Rate | n/a |
| Freddie Mac A- | Level 3 | Add .625 to Rate | n/a |
| Freddie Mac A- | Level 4 | Add 1.250 to Rate | n/a |
| Non-AU Adjustment | FICO Range 620-659, LTV > 90% | 0.250 | 0.250 |
| NY Non-owp | | 0.250 | 0.250 |

## AGENCY SIVA, NIVA, SISA, & NINA

| Process Type | | FICO | Price Adj. |
|---|---|---|---|
| SISA | | >=720 | 0.000 |
| SISA - Fixed Rate | | 700-719 | 0.250 |
| SISA - ARM | | 700-719 | 0.375 |
| SISA - Fixed Rate | | 690-699 | 0.750 |
| SISA - ARM | | 689-699 | 0.875 |
| SIVA | | | 0.500 |
| NIVA | | | 0.750 |
| SIVA or NIVA | <=75 | 680-699 | 0.750 |
| SIVA or NIVA | <=75 | 700-719 | 0.500 |
| SIVA or NIVA | <=75 | >=720 | 0.250 |
| SIVA or NIVA | >=75.01 | 700-719 | 0.750 |
| SIVA or NIVA | >=75.01 | >=720 | 0.500 |
| SIVA or NIVA at NIVA | 3-4 Unit Properties | | 0.750 |
| NINA | | | 1.250 |
| NINA | <=75 | >=720 | 0.000 |
| NINA | >=75.01 | >=720 | 0.500 |
| | | Applicable additional adjusters may apply | |

## NY Coop Incentive

| | | 30 yr Conf Incentive | 15 Yr Conf Incentive |
|---|---|---|---|
| 40,000- 90,000 | | -0.125 | -0.125 |
| 90,001-140,000 | | -0.250 | -0.250 |
| 140,001-240,000 | | -0.375 | -0.375 |
| 240,001 - Conf Limit | | -0.375 | -0.375 |

| Loan balance (Non-NY Coop) | Adjustment |
|---|---|
| 40,000-59,999 | 0.1250 |
| 60,000-79,999 | 0.5000 |
| 80,000-99,999 | 0.3750 |

### Arm Information

| Product | Caps | Margin | Index | Adjustment |
|---|---|---|---|---|
| 3 Month Interest Only LIBOR | 2/1/6 | 2.875 | 5.320 | 0.000 |
| 6 Month Interest Only LIBOR | 2/2/6 | 2.000 | 5.360 | 0.000 |
| 6 Month Treasury | 3/1/6 | 2.750 | 4.820 | 0.000 |
| 1 Yr Treasury | 2/2/6 | 2.750 | 4.900 | 0.000 |
| 3/1 Treasury | 2/2/6 | 2.750 | 4.900 | 0.000 |
| 5/1 Treasury | 5/2/5 | 2.750 | 4.900 | 0.000 |
| 7/1 Treasury | 5/2/5 | 2.250 | 5.300 | 0.500 |
| 10/1 Treasury | 5/2/5 | 2.750 | 4.900 | 0.000 |
| 10/1 Treasury | 5/2/5 | 2.750 | 4.900 | 0.000 |
| 3 Yr LIBOR | 2/2/6 | 2.250 | 5.300 | 0.000 |
| 5/1 LIBOR | 5/2/5 | 2.250 | 5.300 | 0.000 |
| 7/1 LIBOR | 5/2/5 | 2.250 | 5.300 | 0.000 |
| 10/1 LIBOR | 5/2/5 | 2.250 | 5.300 | 0.000 |
| AGENCY 3/1 5/1 LIBOR | 2/2/6 | 2.250 | 5.300 | 0.000 |
| AGENCY 5/1 10/1 LIBOR | 5/2/5 | 2.250 | 5.300 | 0.000 |
| AGENCY 7/1 10/1 LIBOR | 2/2/5 | 2.250 | 5.300 | 0.000 |
| 5/1 LIBOR & AGENCY 7/1 10/1 LIBOR | 5/2/5 | 2.250 | 5.300 | 0.000 |
| 10/1 LIBOR & AGENCY 10/1 10/1 LIBOR | 5/2/5 | 2.250 | 5.300 | 0.000 |

## Non-Agency Conventional Price adjusters

| Loan Feature | | Fixed A-4Y. | Arm A-4Y. |
|---|---|---|---|
| Non-Escrowed Loans | | 0.250 | 0.250 |
| Interest Only | Use NC Pricing | 0.250 | 0.000 |
| Loan Amount | 350,001-$1M Fixed | 0.125 | 0.000 |
| Loan Amount | >$1M-$2M | 0.500 | 0.000 |
| Loan Amount | >$2M-$3M | | 0.375 |
| Low-Max Combo (7+ 4 units) | | 0.250 | 0.000 |
| High-Rise Condos (5+ stories) | for I/L/NY on ARM | 0.375 | 0.125 |
| Second Home | | 0.250 | 0.000 |
| Cash-Out Refinance | | 0.250 | 0.125 |
| 2-Unit | | 0.125 | 0.125 |
| 3-4 Unit | | 0.500 | 0.125 |
| Subordinate Financing | CLTV > 90% - 95% | 0.500 | 0.000 |
| Subordinate Financing | CLTV > 90 CLTV >95% | 0.500 | 0.500 |
| NY Non-owp | | 0.250 | 0.250 |

## FICO Score Adjusters

**Non-Agency Fixed**

| LTV Range | | 720+ | 700-719 | 680-699 | 660-679 | 620-659 |
|---|---|---|---|---|---|---|
| 0 | <= 60% | -0.250 | -0.250 | -0.250 | 0.000 | 0.000 |
| 60.01 - | 70.00% | -0.250 | -0.125 | -0.125 | 0.000 | 0.250 |
| 70.01 - | 75.00% | 0.000 | 0.000 | 0.000 | 0.125 | — |
| 75.01 - | 80.00% | 0.125 | 0.125 | 0.125 | 0.250 | — |
| 80.01 - | 85.00% | 0.125 | 0.250 | 0.250 | 0.375 | — |
| 85.01 - | 90.00% | 0.125 | 0.250 | 0.250 | 0.500 | — |
| 90.01 - | 95.00% | 0.250 | 0.375 | 0.375 | 0.500 | — |

**Non-Agency ARM**

| LTV Range | | 720+ | 700-719 | 680-699 | 660-679 | 620-659 |
|---|---|---|---|---|---|---|
| 0 | <= 60% | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| 60.01 - | 70.00% | 0.000 | 0.000 | 0.125 | 0.125 | 0.500 |
| 70.01 - | 75.00% | 0.000 | 0.000 | 0.000 | 0.125 | — |
| 75.01 - | 80.00% | 0.000 | 0.000 | 0.125 | 0.250 | — |
| 80.01 - | 85.00% | 0.000 | 0.125 | 0.250 | 0.250 | — |
| 85.01 - | 90.00% | 0.125 | 0.125 | 0.250 | 0.375 | — |
| 90.01 - | 95.00% | 0.125 | 0.250 | 0.375 | — | — |

# The New York Mortgage Company. A Division of Indymac Bank.

Retail Rate Sheet                                                                 5/15/2007

**Investor 10**                                                Sheet of 1.5 of 10

Fannie Mae Expanded Approval Pricing & Risk adjusters

### EA Level I - 30 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.375 | -2.000 | -2.000 | -1.875 |
| 7.625 | 8.250 | -2.000 | -1.875 | -1.750 |
| 7.500 | 8.125 | -1.750 | -1.625 | -1.625 |
| 7.375 | 8.000 | -1.625 | -1.500 | -1.500 |
| 7.250 | 7.875 | -1.500 | -1.375 | -1.375 |
| 7.125 | 7.750 | -1.250 | -1.125 | -1.125 |
| 7.000 | 7.625 | -0.625 | -0.625 | -0.500 |
| 6.875 | 7.500 | -0.375 | -0.375 | -0.250 |
| 6.750 | 7.375 | -0.375 | -0.375 | -0.250 |
| 6.625 | 7.250 | -0.125 | -0.125 | 0.000 |
| 6.500 | 7.125 | 0.250 | 0.250 | 0.375 |
| 6.375 | 7.000 | 0.625 | 0.750 | 0.750 |

### EA Level II - 30 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.625 | -2.000 | -2.000 | -1.750 |
| 7.625 | 8.500 | -2.000 | -1.875 | -1.750 |
| 7.500 | 8.375 | -1.750 | -1.625 | -1.625 |
| 7.375 | 8.250 | -1.625 | -1.500 | -1.500 |
| 7.250 | 8.125 | -1.500 | -1.375 | -1.375 |
| 7.125 | 8.000 | -1.250 | -1.125 | -1.125 |
| 7.000 | 7.875 | -0.625 | -0.625 | -0.500 |
| 6.875 | 7.750 | -0.375 | -0.375 | -0.250 |
| 6.750 | 7.625 | -0.375 | -0.375 | -0.250 |
| 6.625 | 7.500 | -0.125 | -0.125 | 0.000 |
| 6.500 | 7.375 | 0.250 | 0.250 | 0.375 |
| 6.375 | 7.250 | 0.625 | 0.750 | 0.750 |

### EA Level III - 30 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 9.000 | -2.000 | -1.875 | -1.750 |
| 7.625 | 8.875 | -2.000 | -1.875 | -1.750 |
| 7.500 | 8.750 | -1.750 | -1.625 | -1.625 |
| 7.375 | 8.625 | -1.625 | -1.500 | -1.500 |
| 7.250 | 8.500 | -1.500 | -1.375 | -1.375 |
| 7.125 | 8.375 | -1.250 | -1.125 | -1.125 |
| 7.000 | 8.250 | -0.625 | -0.625 | -0.500 |
| 6.875 | 8.125 | -0.375 | -0.375 | -0.250 |
| 6.750 | 8.000 | -0.375 | -0.375 | -0.250 |
| 6.625 | 7.875 | -0.125 | -0.125 | 0.000 |
| 6.500 | 7.750 | 0.250 | 0.250 | 0.375 |
| 6.375 | 7.625 | 0.625 | 0.750 | 0.750 |

### EA TPR Level II - 30 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.625 | 8.750 | -2.000 | -1.875 | -1.750 |
| 7.500 | 8.625 | -1.750 | -1.625 | -1.625 |
| 7.375 | 8.500 | -1.625 | -1.500 | -1.500 |
| 7.250 | 8.375 | -1.500 | -1.375 | -1.375 |
| 7.125 | 8.250 | -1.250 | -1.125 | -1.125 |
| 7.000 | 8.125 | -0.625 | -0.625 | -0.500 |
| 6.875 | 8.000 | -0.375 | -0.375 | -0.250 |
| 6.750 | 7.875 | -0.375 | -0.375 | -0.250 |
| 6.625 | 7.750 | -0.125 | -0.125 | 0.000 |
| 6.500 | 7.625 | 0.250 | 0.250 | 0.375 |
| 6.375 | 7.500 | 0.625 | 0.750 | 0.750 |

### EA TPR Level III - 30 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.625 | 9.250 | -2.000 | -1.875 | -1.750 |
| 7.500 | 9.125 | -1.750 | -1.625 | -1.625 |
| 7.375 | 9.000 | -1.625 | -1.500 | -1.500 |
| 7.250 | 8.875 | -1.500 | -1.375 | -1.375 |
| 7.125 | 8.750 | -1.250 | -1.125 | -1.125 |
| 7.000 | 8.625 | -0.625 | -0.625 | -0.500 |
| 6.875 | 8.500 | -0.375 | -0.375 | -0.250 |
| 6.750 | 8.375 | -0.375 | -0.375 | -0.250 |
| 6.625 | 8.250 | -0.125 | -0.125 | 0.000 |
| 6.500 | 8.125 | 0.250 | 0.250 | 0.375 |
| 6.375 | 8.000 | 0.625 | 0.750 | 0.750 |

### EA Level I with Flex. Sub. Fin. - 30 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.625 | -2.000 | -1.875 | -1.750 |
| 7.500 | 8.500 | -1.750 | -1.625 | -1.625 |
| 7.375 | 8.375 | -1.625 | -1.500 | -1.500 |
| 7.250 | 8.250 | -1.500 | -1.375 | -1.375 |
| 7.125 | 8.125 | -1.250 | -1.125 | -1.125 |
| 7.000 | 8.000 | -0.625 | -0.625 | -0.500 |
| 6.875 | 7.875 | -0.375 | -0.375 | -0.250 |
| 6.750 | 7.750 | -0.375 | -0.375 | -0.250 |
| 6.625 | 7.625 | -0.125 | -0.125 | 0.000 |
| 6.500 | 7.500 | 0.250 | 0.250 | 0.375 |
| 6.375 | 7.375 | 0.625 | 0.750 | 0.750 |

### EA Level I - 20 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.375 | -2.000 | -2.000 | -1.875 |
| 7.625 | 8.250 | -2.000 | -2.000 | -1.875 |
| 7.500 | 8.125 | -1.875 | -1.750 | -1.625 |
| 7.375 | 8.000 | -1.750 | -1.625 | -1.625 |
| 7.250 | 7.875 | -1.750 | -1.625 | -1.500 |
| 7.125 | 7.750 | -1.500 | -1.375 | -1.250 |
| 7.000 | 7.625 | -0.875 | -0.750 | -0.625 |
| 6.875 | 7.500 | -0.625 | -0.500 | -0.375 |
| 6.750 | 7.375 | -0.625 | -0.500 | -0.375 |
| 6.625 | 7.250 | -0.375 | -0.250 | -0.125 |
| 6.500 | 7.125 | 0.000 | 0.125 | 0.125 |
| 6.375 | 7.000 | 0.500 | 0.500 | 0.625 |

### EA Level II - 20 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.625 | -2.000 | -2.000 | -1.875 |
| 7.625 | 8.500 | -2.000 | -2.000 | -1.875 |
| 7.500 | 8.375 | -1.875 | -1.750 | -1.625 |
| 7.375 | 8.250 | -1.750 | -1.625 | -1.625 |
| 7.250 | 8.125 | -1.750 | -1.625 | -1.500 |
| 7.125 | 8.000 | -1.500 | -1.375 | -1.250 |
| 7.000 | 7.875 | -0.875 | -0.750 | -0.625 |
| 6.875 | 7.750 | -0.625 | -0.500 | -0.375 |
| 6.750 | 7.625 | -0.625 | -0.500 | -0.375 |
| 6.625 | 7.500 | -0.375 | -0.250 | -0.125 |
| 6.500 | 7.375 | 0.000 | 0.125 | 0.125 |
| 6.375 | 7.250 | 0.500 | 0.500 | 0.625 |

### EA Level III - 20 year FRM (Excludes SRP)

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 9.000 | -2.000 | -2.000 | -1.875 |
| 7.625 | 8.875 | -2.000 | -2.000 | -1.875 |
| 7.500 | 8.750 | -1.875 | -1.750 | -1.625 |
| 7.375 | 8.625 | -1.750 | -1.625 | -1.625 |
| 7.250 | 8.500 | -1.750 | -1.625 | -1.500 |
| 7.125 | 8.375 | -1.500 | -1.375 | -1.250 |
| 7.000 | 8.250 | -0.875 | -0.750 | -0.625 |
| 6.875 | 8.125 | -0.625 | -0.500 | -0.375 |
| 6.750 | 8.000 | -0.625 | -0.500 | -0.375 |
| 6.625 | 7.875 | -0.375 | -0.250 | -0.125 |
| 6.500 | 7.750 | 0.000 | 0.125 | 0.125 |
| 6.375 | 7.625 | 0.500 | 0.500 | 0.625 |

### EA TPR Level II - 20 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.875 | -2.000 | -2.000 | -1.875 |
| 7.625 | 8.750 | -2.000 | -2.000 | -1.875 |
| 7.500 | 8.625 | -1.875 | -1.750 | -1.625 |
| 7.375 | 8.500 | -1.750 | -1.625 | -1.500 |
| 7.250 | 8.375 | -1.625 | -1.500 | -1.250 |
| 7.125 | 8.250 | -1.500 | -1.375 | -1.250 |
| 7.000 | 8.125 | -0.750 | -0.750 | -0.625 |
| 6.875 | 8.000 | -0.625 | -0.500 | -0.375 |
| 6.750 | 7.875 | -0.625 | -0.500 | -0.375 |
| 6.625 | 7.750 | -0.375 | -0.250 | -0.125 |
| 6.500 | 7.625 | 0.000 | 0.125 | 0.125 |

### EA TPR Level III - 20 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 9.375 | -2.000 | -2.000 | -1.875 |
| 7.625 | 9.250 | -2.000 | -2.000 | -1.875 |
| 7.500 | 9.125 | -1.875 | -1.750 | -1.625 |
| 7.375 | 9.000 | -1.750 | -1.625 | -1.625 |
| 7.250 | 8.875 | -1.750 | -1.625 | -1.500 |
| 7.125 | 8.750 | -1.500 | -1.375 | -1.250 |
| 7.000 | 8.625 | -0.875 | -0.750 | -0.625 |
| 6.875 | 8.500 | -0.625 | -0.500 | -0.375 |
| 6.750 | 8.375 | -0.625 | -0.500 | -0.375 |
| 6.625 | 8.250 | -0.375 | -0.250 | -0.125 |
| 6.500 | 8.125 | 0.000 | 0.125 | 0.125 |

### EA Level I with Flex. Sub. Fin. - 20 year FRM

| Base Rate | Note Rate | 30-Day Best Efforts | 45-Day Best Efforts | 60-Day Best Efforts |
|---|---|---|---|---|
| 7.750 | 8.750 | -2.000 | -2.000 | -1.875 |
| 7.500 | 8.625 | -2.000 | -2.000 | -1.875 |
| 7.375 | 8.500 | -1.875 | -1.750 | -1.625 |
| 7.250 | 8.375 | -1.750 | -1.625 | -1.625 |
| 7.125 | 8.250 | -1.500 | -1.375 | -1.250 |
| 7.000 | 8.125 | -0.875 | -0.750 | -0.625 |
| 6.875 | 8.000 | -0.625 | -0.500 | -0.375 |
| 6.750 | 7.875 | -0.625 | -0.500 | -0.375 |
| 6.625 | 7.750 | -0.375 | -0.250 | -0.125 |
| 6.500 | 7.625 | 0.000 | 0.125 | 0.125 |

### Fannie Mae Expanded Approval Adjustments

| Loan Feature | LTV % | Adjustment |
|---|---|---|
| Purchase with Max Note Rate | >90% LTV ARM ONLY | 0.250 |
| Subordinate Financing | LTV > 65% & CLTV > 90% | 0.250 |
| Cash Out Refi - Condo COOP, Level II & III | | 0.500 |
| Cash Out Refinance | 70.01-80% | 0.500 |
| Cash Out Refinance | >60.01% | 0.500 |
| Investment Properties Cond. 30/30 yr. FIX & ARM | LTV <= 75%, FICO <= 679 | 0.750 |
| Investment Properties Cond. 30/30 yr. FIX & ARM | LTV <= 75%, FICO > 680-719 | 0.625 |
| Investment Properties Cond. 30/30 yr. FIX & ARM | LTV <= 75%, FICO >= 720 | 0.500 |
| Investment Properties Cond. 30/30 yr. FIX & ARM | LTV > 75%, FICO <= 679 | 1.750 |
| Investment Properties Cond. 30/30 yr. FIX & ARM | LTV > 75%, FICO > 680-719 | 1.625 |
| Investment Properties Cond. 30/30 yr. FIX & ARM | LTV > 75%, FICO >= 720 | 1.500 |
| Investment Properties Cond. 30/15 yr. FIX | LTV <= 75%, FICO <= 679 | 0.250 |
| Investment Properties Cond. 20/15 yr. FIX | LTV <= 75%, FICO > 680-719 | 0.125 |
| Investment Properties Cond. 20/15 yr. FIX | LTV <= 75%, FICO >= 720 | 0.000 |
| Investment Properties Cond. 20/15 yr. FIX | LTV > 75%, FICO <= 679 | 1.250 |
| Investment Properties Cond. 20/15 yr. FIX | LTV > 75%, FICO > 680-719 | 1.125 |
| Investment Properties Cond. 20/15 yr. FIX | LTV > 75%, FICO >= 720 | 1.000 |
| 3-Unit | >90% | 0.500 |
| COOP Owner Occupied | >92% | 0.500 |
| COOP 2nd Home | >92% | 0.750 |

**From:**         Craig Kowalski
**Sent:**         5/29/2007 7:01:45 PM
**To:**           'The Kowalski's'
**Subject:**      FW:

---

From: Robert Deiorio
Sent: Monday, September 18, 2006 2:31 PM
To: Craig Kowalski; Richard Daesener
Subject:

Remember this stuff??

Bob Deiorio

Business Development Manager

Opteum Financial Services

400 Valley Rd Ste 104

Mt Arlington, NJ 07856

Office (973) 601-9242

Cell  (973) 219-7256

Fax (888) 889-4528

E-mail rdeiorio@opteum.com <mailto:rdeiorio@opteum.com>

Star Dial 2962

Attachment: BKinfo.rtf

Attachment: Bankruptcy Attorney Presentation.ppt

Attachment: Attorney Meeting 10 Question.doc

```
                              attachments.txt
#1 wheel_Rev.doc
#10  CPA HUD Letter_Rev.doc
#2  Congratulations! Fax Listing Agent.doc
#3  Seller Cross Sell_Rev.doc
#4  Agent Welcome Letter Buy Agent_Rev.doc
#5  Agent Welcome Letter Listing Agent_Rev.doc
#7  Weekly Status Gram_Rev.doc
#8  Client Survey Brag Letter - Buy Agent_Rev.doc
#9  Client Survey Brag Letter - Listing Agent_Rev.doc
2007 Business Plan.doc
2007 Business Plan.pdf
2007 Prime-HCS Comp Plan Summary Orlando Meeting.xls
AMEC.csv
Application Discovery Page.doc
Approved Broker Loan List May 2007.pdf
Apr 16 FMS.pdf
attachments.txt
Attorney Meeting 10 Question.doc
Bankruptcy Attorney Presentation.ppt
Bankruptcy Customer letter.doc
Bankruptcy drip #1 (2).doc
Bankruptcy drip #2 (2).doc
Bankruptcy drip #3 (2).doc
Bankruptcy drip #4 (2).doc
BKinfo.rtf
Business Plan 2007.doc
business plan wells.xls
business planning.xls
Copy of BROKERROSTER 2006 fass.xls
creditrepairltr bk7.doc
creditrepairltr.doc
cust. Lables.doc
Customer.csv
customers labels.doc
EQUIFAXcreditbureaultr brickle.doc
EQUIFAXcreditbureaultr.doc
EXPERIANcreditbureaultr brickle.doc
EXPERIANcreditbureaultr.doc
failure notice.msg
FHA Quick Guide.doc
Financial Planner book.doc
hts_bpg BUSINESS PLAN revised 2007.xls
hts_bpg BUSINESS PLAN revised.xls
image001.gif
John Palmiotto.vcf
Leads.csv
MealTicket.pdf
messinaround.ppt
newreferral bk.doc
Northeast Regiona Juniorl Loan Officer Compensation Agreement1.11.06.doc
Opteum Financial Services Bankruptcy deck.ppt
pre qual letter stronger.doc
pre qual letter.doc
Recruiting Toolkit.pdf
Recruiting.doc
SalesCoaching-Steps.doc
Sites listing Loan Officers.doc
TaxReform_Ch5[1].pdf
TRANSUNIONcreditbureaultr brickle.doc
TRANSUNIONcreditbureaultr.doc
```